STATE OF NORTH CAROLINA v. KENNETH BERNARD HOLMES

No. 16

(Filed 28 November 1978)

1. **Criminal Law § 102.5— remarks by district attorney improper—no prejudice to defendant**
    Though remarks by the district attorney that he could have tried defendant for first degree murder, that he believed defendant would hire somebody to kill and that a witness had lied for his son were improper, the trial judge, in light of the strong evidence of defendant's guilt, did not commit prejudicial error by failing to instruct the jury to disregard the remarks or by failing to declare a mistrial on his own motion.

2. **Criminal Law § 86.9— State's objections sustained—witness answers anyway—no prejudice to defendant**
    Defendant's assignment of error to the trial judge's ruling sustaining the State's objections to questions, directed to a witness who had plea bargained, which sought to elicit statements made to him by his counsel that he would be

tried for first degree murder if he did not testify against defendant is without merit, though such declarations were admissible to evidence the witness's state of mind, since, after a brief delay, the witness answered the question, and the information sought by the questions was already in the record.

**3. Criminal Law § 66.7— pretrial photographic identification—no taint—independent origin of in-court identification**

In a second degree murder prosecution the trial court did not err in denying defendant's motion to strike identification testimony, since defendant never objected throughout the witness's lengthy testimony, and since the court, upon defendant's motion to strike, made findings supported by the evidence and concluded that a pretrial photographic identification procedure was not impermissibly suggestive and that the witness's identification was of independent origin and not tainted by any pretrial procedure.

**4. Criminal Law § 117.2— interested witness—jury instructions proper**

Defendant's contention that the trial judge erred in failing to explain to the jury why a witness who had plea bargained was an interested witness is without merit since it was clear from the court's instruction on interested witnesses, given *ex mero motu*, and from the record evidence why the witness was an interested witness.

**5. Homicide § 2— accessory before the fact to second degree murder—punishment greater than conviction for second degree murder—accessory before the fact is lesser included offense**

Defendant's contention that the crime of accessory before the fact to second degree murder is not a lesser included offense of the charge of second degree murder because a conviction of accessory before the fact carries a mandatory sentence of life imprisonment while a conviction of second degree murder permits the imposition of a discretionary sentence ranging from two years to life imprisonment is without merit since the Supreme Court has held that the crime of accessory before the fact is included in the charge of the principal crime.

APPEAL by defendant from *Lewis, J.,* 14 November 1977 Criminal Session of ALEXANDER Superior Court.

Defendant was charged by a bill of indictment with the first degree murder of Horace Andrew Morrison, Jr. The State elected to try defendant for second degree murder.

The State offered as its principal witness Marshall Brown, who was indicted for the same murder. He had previously entered a plea of guilty to second degree murder as a result of plea negotiations between his attorney and the district attorney. Brown testified that defendant had hired him to murder Horace Andrew Morrison, Jr., who was a witness in a pending criminal case against defendant. Defendant had promised to pay Brown

the sum of $2,000.00 and to deliver to him a pound of marijuana as the price for the killing. On 3 July 1977, pursuant to the arrangement with defendant, he shot and killed Morrison, who was visiting in a friend's home in Taylorsville, North Carolina.

The State offered other witnesses whose testimony tended to show that on the day preceding the shooting, defendant had furnished money to buy a .30 caliber carbine which weapon was actually purchased by Johnny Ray Porter. There was also expert testimony to the effect that a .30 caliber carbine which was found in defendant's possession after his arrest in Washington, D. C., was the weapon which fired a bullet that was removed from the wall of the room in which Morrison was sitting and that casings found in a wooded area about 70 feet from the house where Morrison was shot were also from the same weapon.

Defendant testified and stated that he had never asked Brown to kill anyone. He further denied going to a gun shop and furnishing money to buy the .30 caliber carbine and ammunition. He also offered other evidence in the nature of an alibi.

At the close of the evidence, the following issues were submitted to the jury:

(1) Do you find the defendant guilty of accessory before the fact of second-degree murder? or,

(2) Do you find the defendant not guilty?

The jury returned a verdict of guilty of accessory before the fact to murder in the second degree. Defendant appeals from judgment imposing a sentence of life imprisonment.

*Rufus L. Edmisten, Attorney General, by James Peeler Smith, Assistant Attorney General, for the State.*

*T. C. Homesley, Jr., for defendant appellant.*

BRANCH, Justice.

[1] Did the trial judge commit prejudicial error by failing to declare a mistrial on his own motion or in the alternative by failing to instruct the jury to disregard certain remarks made by the district attorney in the presence of the jury? The answer to this question is governed by the followed well recognized rules.

Every person charged with a crime has the right to be tried before an impartial judge and by an unprejudiced jury. It is the duty of the court and the prosecuting attorney to see that this right is not denied. *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). The prosecuting attorney should use every honorable means to secure a conviction, but it is his duty to exercise proper restraint so as to avoid misconduct, unfair methods or overzealous partisanship which would result in taking unfair advantage of an accused. *State v. Britt, supra; State v. Monk, supra.* It is improper for counsel to place before the jury incompetent and prejudicial matter by injecting his personal beliefs and opinions which are not supported by the evidence. *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974), *death sentence vacated*, 428 U.S. 902; *State v. Monk, supra.* The prosecuting attorney owes a duty to the state which he represents and to the court of which he is an officer to observe these often repeated rules of practice which are created by law to ensure that every defendant is afforded the safeguards guaranteeing him a fair trial. *State v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762 (1954). To do otherwise would be to demean the courts and to impugn the constitutional guarantees of due process.

The conduct of a trial and the prevention of unfair tactics by all connected with the trial must be left in a large measure to the discretion of the trial judge, and it is the duty of the trial judge to intervene when remarks of counsel are not warranted by the evidence and are calculated to prejudice or mislead the jury. *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967); *State v. Kirkman*, 234 N.C. 670, 68 S.E. 2d 315 (1951). We will not interfere with the exercise of the court's discretion unless the impropriety of counsel was gross and calculated to prejudice the jury. *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424 (1955).

We turn to the alleged improprieties which are assigned as error.

During the cross-examination of the State's witness Brown concerning his plea bargaining arrangement with the State, defense counsel asked the witness if he knew that he could have received the death penalty on the charge contained in the bill of indictment for first degree murder. The district attorney objected and added, "I could have tried your man for first degree murder

too." The trial judge overruled the State's objection without any further instruction or comment. We find little prejudice in this remark of the district attorney since from the time of arraignment when the indictment charging defendant with first degree murder was read in the presence of the jury and the district attorney elected to try defendant "for second degree murder or whatever verdict the evidence may warrant," it must have been crystal clear that the district attorney could have in fact tried defendant upon the charge of first degree murder.

As defense counsel continued his cross-examination of the witness Brown, the following exchange took place:

MR. HOMESLEY: I believe he [defendant] is sort of a health nut. . . . jogs and runs?

MR. ZIMMERMAN: Objection to what Mr. Homesley believes. I believe he'd hire somebody to kill somebody, too.

COURT: Overruled.

It is true that at the proper time for argument, the district attorney may argue the evidence and the legitimate inferences that the jury might draw from the evidence, however, it is not proper for the district attorney to interpose his personal opinions before the jury as to the guilt or innocence of an accused during the presentation of evidence and before all the evidence is in. Here the district attorney's statement that he believed defendant would hire somebody to kill was improper.

During the cross-examination of defendant's father, Fred Alexander Holmes, the district attorney apparently elicited from the witness that under some circumstances he would lie for his son. On redirect examination by defense counsel, the record discloses that the following occurred:

MR. HOMESLEY: Mr. Holmes, have you lied for him at any time?

MR. ZIMMERMAN: Objection, Your Honor, he certainly has.

COURT: Just a minute. You gentlemen are trying my patience. Do not use the word lie in my Courtroom again. Members of the Jury, you will not consider that.

WITNESS: I have told the truth today.

MR. HOMESLEY: All right.

The district attorney's statement that the witness has lied for his son exceeded the bounds of propriety. *State v. Miller, supra; State v. Thompson,* 278 N.C. 277, 179 S.E. 2d 315 (1971). However, the action of the trial judge in immediately interceding and cautioning the jury not to consider this statement tended to cure any prejudice to defendant. Ordinarily, such action by the trial judge cures the impropriety of counsel since the presumption is that the jurors will understand and comply with the court's instructions. *State v. Britt, supra; State v. Self,* 280 N.C. 665, 187 S.E. 2d 93 (1972). We do not believe that this is one of the instances where the impropriety was so gross and highly prejudicial that a curative instruction would not remove the prejudice from the minds of the jurors. *See, State v. Roach,* 248 N.C. 63, 102 S.E. 2d 413 (1958).

The conduct of the district attorney in making gratuitous remarks concerning the case in connection with his objections and during the cross-examination by defense counsel is not approved. Comments upon the evidence should be made in his argument to the jury or to the judge in the jury's absence.

Finally, we must determine if the remarks of the district attorney, singly or collectively, resulted in such impropriety as would justify disturbing the verdict and judgment entered in this case. The trial judge's intervention and instruction to the jury not to consider the statement that the witness Fred Holmes had lied tended to cure the prejudicial effect of this statement. The dignity and decorum of the court suffered more prejudicial effect from the conduct of the district attorney than did defendant. In view of the strong evidence of defendant's guilt, we are of the opinion that these isolated remarks in the heat of battle did not affect the verdict of the jury. We, therefore, hold that the trial judge did not commit prejudicial error by failing to instruct the jury to disregard certain remarks of the district attorney and by failing to declare a mistrial on his own motion.

[2] Defendant assigns as error the ruling of the trial judge sustaining the State's objections to questions directed to the witness Marshall Lee Brown which sought to elicit statements made to him by his counsel.

The record shows the following:

MR. HOMESLEY: And he told you as late as today if you didn't testify against Holmes that they were going to try you for first degree murder?

MR. ZIMMERMAN: Objection. I don't know what he told him about that, Your Honor.

COURT: Sustained.

MR. HOMESLEY: Is that your understanding?

MR. ZIMMERMAN: Objection.

COURT: Overruled.

WITNESS: No, he didn't tell me that today.

Defendant argues that these declarations were admissible to evidence the witness's state of mind, *e.g.*, to charge him with knowledge or notice of the facts declared. Volume 1, Stansbury's North Carolina Evidence (Brandis Rev.), Section 141, pages 469, 470. We are of the opinion that this is a correct statement of the rule. However, it is obvious that there is no merit in this assignment of error since, after a brief delay, the witness answered the question. Further, the stipulation concerning the plea arrangement with the witness Brown was in the record, and the witness unequivocally testified that he understood that if he did not testify against defendant, he would be tried for first degree murder rather than upon the charge of second degree murder. This assignment of error is without merit.

[3] Defendant assigns as error the trial judge's denial of his motion to strike the identification testimony given by the witness Johnny Ray Porter.

The witness Porter testified, without objection, that on 2 July 1972, he, Marshall Brown, Steve Turner and defendant went to the P and G Gun Shop in Statesville, North Carolina, where he "signed" for and purchased a .30 caliber carbine. He made the purchase at the request of Marshall Brown and paid for the weapon with money furnished by the defendant. The group then proceeded to a wooded area where the weapon was test-fired. Throughout his lengthy testimony, the witness, without objection, many times referred to defendant as the person who furnished the money to buy the weapon. It was not until the State had

rested it case that defense counsel challenged Porter's identification testimony by lodging a motion to strike.

In *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972), the defendant was charged with rape of an eight year old child who identified her assailant. Defendant did not object or request a *voir dire* hearing at the time the identification testimony was given. On appeal, the defendant contended that certain pretrial photographic procedures were so impermissibly suggestive that the identification testimony should have been suppressed. In rejecting this contention, Justice Lake, speaking for the Court, stated:

> In *State v. Accor* and *State v. Moore*, 277 N.C. 65, 79, 175 S.E. 2d 583, Chief Justice Bobbitt said: "When the State offers a witness whose testimony tends to identify the defendant as the person who committed the crime charged in the indictment, and the defendant interposes timely objection and requests a *voir dire* or asks for an opportunity to 'qualify' the witness, such *voir dire* should be conducted in the absence of the jury and the competency of the evidence evaluated. Upon such hearing, if the in-court identification by a witness is challenged on the ground it is tainted by an unlawful out-of-court photographic or corporeal identification, all relevant facts should be elicited and all factual questions determined, including those involving the defendant's constitutional rights, pertinent to the admissibility of the proffered evidence." In the present case, as above noted, there was no objection to the initial in-court identification of the defendant by this witness and there was no request for a voir dire. This assignment is without merit.

Accord: *State v. Wilson*, 289 N.C. 531, 223 S.E. 2d 311 (1976); *State v. Haskins*, 278 N.C. 52, 178 S.E. 2d 610 (1971).

In the case before us, there was no objection or request for a *voir dire* at the time identification testimony was received. Even so, upon defendant's motion to strike the testimony, the trial judge, after further examination of the witness Porter, *inter alia*, found:

> 5. That the SBI Agent Lester had a package of photographs with him at the time he took a statement from the witness

Porter; these photographs being of black males of varying sizes and ages, and numbering anywhere from four to eight.

6. That there is no testimony by anyone that the officer pointed out the photograph which he, Officer Lester, wanted the witness Porter to identify; and the record is silent as to whether or not these photographs were placed in any suggestive order.

7. The photographs are not available to this trial.

Based on his findings, the trial judge concluded:

. . . that there was no pretrial identification procedure so unnecessarily suggestive and conductive [sic] to irreparably mistaken identification as to offend fundamental standards of decency, fairness and justice. The Court further concludes that even if it be found (and there is no evidence to so find) that the pretrial identification procedure by Officer Lester was made under impermissible circumstances, the Court concludes that the witness Porter's in-court identification of the Defendant Holmes is and was of independent origin and, under the totality of the circumstances, is not tainted by any illegal pretrial proceeding.

There was ample evidence to support the trial judge's findings, and the findings in turn support his conclusions and ruling.

For the reasons stated, this assignment of error is overruled.

[4] Defendant contends that the trial judge erred in failing to explain to the jury *why* Marshall Brown was an "interested witness."

The trial judge is not required to give a cautionary instruction that the jury should scrutinize the testimony of a witness on the grounds of interest or bias absent a request that he so instruct. *State v. Roberts*, 293 N.C. 1, 235 S.E. 2d 203 (1977). Here defense counsel did not request such instruction, but the trial judge, *ex mero motu*, gave the following instruction:

In this case, you may find that a witness is interested in the outcome of this trial. In deciding whether or not to believe such a witness, you may take his or her interest into

account. If, after doing so, you believe his or her testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

The State has advised you and, in cross-examination, Mr. Marshall Brown has admitted that Brown shot Drew Morrison and killed him and that Brown was testifying under an agreement with the State for a charge reduction in exchange for his testimony from first-degree murder to what he pleaded guilty to of second-degree murder.

I instruct you that you should examine Brown's testimony with great care and caution in deciding whether or not to believe him. If after doing so, you believe his testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

This instruction was adequate, and the instruction and the record evidence made it perfectly clear *why* Brown was an interested witness.

[5] Finally, defendant assigns as error the court's instruction to the jury to return a verdict of either guilty of accessory before the fact to murder in the second degree or a verdict of not guilty.

Defendant was indicted for murder in the first degree. At his arraignment during the week of his trial, the district attorney elected to try defendant on the charge of second degree murder or "whatever verdict the evidence may warrant." The trial judge submitted to the jury only the possible verdicts of guilty of accessory before the fact to murder in the second degree or a verdict of not guilty.

Defendant takes the position that the only permissible verdicts that the judge should have submitted to the jury were guilty of murder in the second degree or not guilty. He points to the fact that since the charge of accessory before the fact to second degree murder carries a mandatory sentence of life imprisonment and a conviction upon a charge of second degree murder permits the imposition of a discretionary sentence ranging from two years to life imprisonment that the crime of accessory before the fact is not a lesser included offense of the charge of second degree murder.

It is true that G.S. 14-6 provides that any person convicted as an accessory before the fact in either of the degrees of murder shall be imprisoned in the State's prison for life and that G.S. 14-17 provides for a discretionary sentence of imprisonment for a term ranging from two years to life imprisonment upon a conviction on a charge of murder in the second degree. However, this Court has held that the imposition of a life sentence upon a conviction of accessory before the fact of murder when the actual murderer received a lesser sentence was not constitutionally impermissible. In so holding, the Court stated that it cannot be assumed that the Legislature's division of murder into degrees together with a reduction of punishment for murder in the second degree implied a reduction in the punishment for conviction as an accessory before the fact to murder. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970). *Benton* also stands for the proposition that there may be accessories before the fact to murder in the first degree and murder in the second degree. Thus, standing alone, the disparity in punishment would not support defendant's position. Whether accessory before the fact to second degree murder is a lesser included offense of murder in the second degree poses a more difficult question which has caused an apparent split of authority and a division among members of the Court.

In *State v. Green,* 119 N.C. 899, 26 S.E. 112 (1896), this Court, citing *State v. Dewer,* 65 N.C. 572 (1871), held that it was necessary to *indict* and try an accused as an accessory in order for his conviction to stand. However, these cases were followed by *State v. Bryson,* 173 N.C. 803, 92 S.E. 698 (1917), which, without expressly overruling the preceding cases, held that the crime of accessory before the fact was included in the charge of murder and that the court could legally impose punishment upon conviction as an accessory before the fact to murder when the bill of indictment charged murder. We here note that in *State v. Simons,* 179 N.C. 700, 103 S.E. 5 (1920), the Court quoted the rule set forth in *Bryson* with approval, noting that *Bryson* substantially overruled an earlier case.

In *State v. Jones,* 254 N.C. 450, 119 S.E. 2d 213 (1961), Chief Justice Winborne, speaking for the majority, with Justices Parker, Bobbitt and Higgins dissenting, flatly stated:

"Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or a less degree of the same crime * * *." G.S. 15-170. The crime of accessory before the fact is included in the charge of the principal crime. . . .

We have followed *Jones* in the recent cases of *State v. Philyaw*, 291 N.C. 312, 230 S.E. 2d 370 (1976); *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093; *State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907. Thus, the weight of authority dictates that we adhere to the line of the cases represented by *Jones* and *Philyaw*. Further, we do not think that this case is a proper vehicle for further consideration and clarification of the rule. However, recognizing that the primary problem which has caused a split of authority and a division among the members of the Court arises from the drawing of the bills of indictment and that possible questions of double jeopardy lurk in the present rule, it might be proper for the Legislature to consider clarifying the matter by abolishing the distinction between accessory before the fact and principal and providing the same punishment for both offenses.

This assignment of error is overruled.

Our careful examination of defendant's assignments of error and this entire record reveals no error which warrants a new trial.

No Error.