STATE OF NORTH CAROLINA v. ARTHUR EDWARD BALDWIN

No. COA96-419

(Filed 4 March 1997)

**1. Evidence and Witnesses § 1294 (NCI4th)— cross-examination—police officer—prior case—deceit used to obtain confession**

The trial court erred in a first-degree murder prosecution (life sentence) of a sixteen-year-old defendant by denying defendant the opportunity to cross-examine a police detective as to specific acts in a prior investigation where defendant sought to reveal that the detective had deceived at least one other person in an effort to obtain a confession for committing a crime. The probative value of this evidence was important in light of the very weak case the State had if the confession was rejected. N.C.G.S. 8C-1, Rule 608(b).

**Am Jur 2d, Evidence §§ 307, 310, 743.**

**2. Evidence and Witnesses § 267 (NCI4th)— expert testimony—psychiatrist—defendant's mental condition—not general character evidence**

It was error in the first-degree murder prosecution (life sentence) of a sixteen-year-old for the trial court to exclude expert testimony from a psychiatrist on the grounds that it was prohibited character evidence where the psychiatrist would have offered testimony that defendant's psychological characteristics would made him more prone to making a false confession in police interrogation. The defendant did not seek to have the psychiatrist provide a generalized description of the defendant's disposition; rather, his expert testimony would have related to psychological factors affecting the defendant's mental condition.

**Am Jur 2d, Evidence §§ 363, 368, 380.**

Appeal by defendant from judgment entered 19 December 1995 in Forsyth County Superior Court by Judge William Z. Wood, Jr. Heard in the Court of Appeals 28 January 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Jeffrey P. Gray, for the State.*

*J. Clark Fischer for defendant-appellant.*

GREENE, Judge.

Arthur Edward Baldwin (defendant) was convicted of first degree felony murder by a jury in the December 1995 Criminal Session of the Forsyth County Superior Court. Defendant appeals from a mandatory sentence of life imprisonment.

The defendant was born on 29 June 1978 and was fifteen years old on 28 June 1994, the day Debbie Dawn Burnette (Burnette) was murdered. On 10 July 1994 the defendant was charged in a juvenile petition with the murder of Burnette. On 26 August 1994 a district court judge found probable cause and transferred the case to the superior court. On 23 February 1995 the defendant moved to suppress a statement he provided to Winston-Salem detective R.L. Barren (Barren) in which he confessed to holding a shotgun that accidentally discharged killing Burnette during a staged robbery at the Knight's Inn on the early morning of 28 June 1994. On 25 October 1995 the trial court denied the motion to suppress after concluding that the statement was "knowingly, freely and voluntarily made without any threats or promises and free of any coercion."

At the trial the State presented evidence that on 28 June 1994 (in the early morning hours) two black men, one wearing a hood, entered a room at the Knight's Inn where Burnette was living. The man wearing the hood pointed the gun at Burnette and asked for her "shit." While the gun was pointed at Burnette it discharged, killing her. The witness, a friend of Burnette who was in the room with her at the time of the murder, could not identify the two black men. Another witness for the State testified that, in early July 1994, she heard the defendant say that he had killed the white lady at the Knight's Inn. After making the statement, which was made when he was "getting high," the defendant then said that he was "just kidding."

The State also offered the testimony of Barren who testified that, after taking the defendant into custody, he gave the defendant "a broad scenario" as to what may have occurred at the time of the murder. The defendant was told that it may assist him during the course of this investigation if he made a truthful and honest statement in reference to the events that occurred. The defendant did not appear to be impaired or intoxicated and he was not threatened or promised anything. Barren admitted that there were no fingerprints or other physical evidence linking the defendant to the murder of Burnette. He stated that he was "familiar with a number of different investigative techniques to use in terms of interrogating a criminal suspect,"

STATE v. BALDWIN

[125 N.C. App. 530 (1997)]

but that it was never his "purpose to trick anyone to tell [him] something about an incident that they have no knowledge of."

The defendant testified and denied that he had killed Burnette. He told the jury that he was at another location at the time of the murder and learned of the incident from a news report. He further testified that he was arrested on 10 July 1994 and was at the time of his interrogation by Barren still under the influence of alcohol and marijuana which he had used the night before. According to the defendant the following communication occurred between him and Barren:

> A. He asked me where I was the morning of the 28th and then I told him I was at Shannon and Jennifer's house and then [Barren] looked at me and said, "I'll ask you one more time. Where were you on the morning of the 28th?" I told him again where I was and then [he] laughed at me and said he knew where I was and he knew I wasn't there and he told me that [he knew] I had shot [Burnette] . . . and I told him I didn't and I told him over and over that I didn't do it and where I was and he didn't believe me.
>
> Q. And when you told him this, did he say anything to you?
>
> A. He told me that I was facing life in prison and there was no need of me lying to him because he already has the scoop and he said some people . . . told him what happened and he knows about it and *he said he had my fingerprints and he said an eye witness* (emphasis added).

The defendant offered several alibi witnesses. Betty Jones testified that the defendant was living with her at the time of the murder and that on the early morning (4:00 A.M.) of 28 June 1994 she was awakened by the sound of a gunshot from the direction of the adjacent Knight's Inn. She got out of bed and checked the others in her house and observed the defendant watching television.

During the trial the defendant requested permission from the trial court to examine Barren about his conduct in the interrogation of Parris Kennerson (Kennerson), a suspect in a 1992 murder investigation. Specifically, the defendant sought to examine Barren regarding whether he had falsely misled Kennerson to believe that there were "hair and fingerprints" found on the victim's body. The defendant contended that this examination was proper under Rule 608(b) of the Rules of Evidence and should be considered by the jury in its evaluation of the truthfulness of Barren's testimony relating to whether the defendant's confession was coerced. The trial court sustained the

State's objection to this testimony on the grounds that it was too "remote" to be admissible under Rule 608(b) and alternatively on the grounds that "its prejudicial effect . . . grossly outweighs any probative effect" under North Carolina Rules of Evidence, Rule 403. N.C.G.S. § 8C-1, Rule 403 (1986). The defendant was permitted to make a tender of proof for the record.

Outside the presence of the jury the defendant examined Barren with regard to his interrogation of Kennerson in 1992. Barren stated that he asked Kennerson to "explain how his hair and fingerprints were found on" the deceased's body and told him that he "could prove that [Kennerson] had . . . killed" the decedent. He further testified that he did not have any "fingerprints or any item of physical evidence linking" Kennerson to the crime and that he could not "have proved [at the time of the interrogation] that [Kennerson] was the one who committed the killing."

The defendant also attempted to introduce expert psychiatric testimony from Dr. Gary Hoover (Dr. Hoover) of the defendant's psychological characteristics that would make him more prone to "making a false confession in police interrogation." The trial court sustained the State's objection to this evidence on the grounds that the evidence was inadmissible because it constituted "expert testimony on character or a trait of character under Rule 405." The defendant was permitted to make an offer of proof for the record. Dr. Hoover would have testified that the defendant "as a matter of personality make-up . . . fits the criteria . . . with regard to coping mechanisms in response to pressure under stress" which would make him likely "to fabricate stories . . . to reduce the stress demands" of confrontation with authority.

The issues are whether the trial court erred: (I) in not permitting the cross-examination of Barren as to the alleged specific acts of dishonesty during a previous interrogation of Kennerson in a 1992 murder investigation; and (II) in excluding Dr. Hoover's testimony on the grounds that it was prohibited character evidence.

I

[1] The standard for the *admissibility* of a confession is "whether it was given voluntarily and understandingly." *State v. Chapman*, 343 N.C. 495, 500, 471 S.E.2d 354, 356 (1996). In other words, if the confession is not given voluntarily and understandingly, it cannot be presented into evidence and must be suppressed. The use of trickery or

deceit by the police in the securing of a confession, although not commendable, does not standing alone render the confession inadmissible. *State v. Jackson*, 308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983). "The admissibility of the confession must be decided by viewing the totality of the circumstances, one of which may be whether the means employed were calculated to procure an untrue confession." *Id.* The question of admissibility of the confession is for the trial judge. *State v. Moore*, 321 N.C. 327, 339, 364 S.E.2d 648, 654 (1988); N.C.G.S. § 8C-1, Rule 104(e) (1992).

Once the trial court determines that the confession is admissible, its weight and credibility are for the jury and the defendant retains the right to present evidence relevant to these issues. N.C.G.S. § 8C-1, Rule 104(e); *Moore*, 321 N.C. at 339, 364 S.E.2d at 654. "Hence, evidence as to the circumstances under which the statements attributed to defendant were made may be offered or elicited on cross-examination in the presence of the jury." *State v. Barber*, 268 N.C. 509, 511, 151 S.E.2d 51, 53 (1966). Thus "even if the court determines that [the] confession was not coerced, the defendant may introduce evidence of coercion, since this is relevant to the weight of the evidence." N.C.G.S. § 8C-1, Rule 104(e).

In this case the defendant does not contest the admissibility of the confession. He does, however, argue the evidence, sought to be elicited on the cross-examination of Barren, that Barren had previously lied to another murder suspect "under circumstances strikingly similar" to the defendant's interrogation "was directly relevant to the key issue of whether [the defendant's] confession was coerced by Barren and hence unreliable." We agree.

Rule 608(b) specifically allows the cross-examination of a witness with respect to specific conduct of the witness that indicates his character for truthfulness or untruthfulness if the conduct in question "is in fact probative of the truthfulness or untruthfulness and is not too remote in time" and if "the conduct . . . did not result in a conviction," *State v. Morgan*, 315 N.C. 626, 634, 340 S.E.2d 84, 89-90 (1986); N.C.G.S. § 8C-1, Rule 608(b) (1992), and provided further that the "probative value of the evidence is not outweighed by the risk of unfair prejudice, confusion of issues, or misleading the jury, and that the questioning will not harass or unduly embarrass the witness." *Morgan*, 315 N.C. at 634, 340 S.E.2d at 90; N.C.G.S. § 8C-1, Rule 403. The focus "is upon whether the conduct sought to be inquired into is of the type which is indicative of the actor's character for truthfulness or untruthfulness." *Morgan*, 315 N.C. at 634, 340 S.E.2d at 90.

Evidence that a witness has attempted to deceive others is among the types of conduct "most widely accepted" as being indicative of one's character for truthfulness or untruthfulness. *Morgan*, 315 N.C. at 635, 340 S.E.2d at 90.

In this case the defendant sought, in his cross-examination of Barren, to reveal to the jury that Barren had in May of 1992 deceived a person he was investigating in an effort to obtain a confession of that crime. This evidence is probative of Barren's character for untruthfulness and is not too remote, having occurred only two years prior to Barren's interrogation of the defendant, *see State v. Roberson*, 93 N.C. App. 83, 85, 376 S.E.2d 486, 487 (1989) (five-year lapse was not too remote for other crimes in context of Rule 404(b)), and there is no evidence that Barren was convicted of any crime for that 1992 deception.

Furthermore, we do not believe the risk of unfair prejudice to the State is outweighed by the probative value of this evidence. The defendant's position in the trial court was that the confession was coerced by Barren. The defendant testified that Barren told him that "he had my fingerprints and . . . an eye witness." Barren testified that he had neither. Whether Barren lied to the defendant, a sixteen-year-old young man, was an issue for the jury to evaluate in determining the weight and credibility of the confession. Whether Barren had lied to other persons from whom he sought to obtain a confession was most relevant and probative on the question of whether Barren had lied to this defendant in securing his confession. The probative value of this evidence becomes even more important in light of the very weak case the State has against this defendant if the confession is rejected by the jury. The trial court, therefore, erred in denying the defendant the opportunity to examine Barren with respect to the 1992 Kennerson investigation as this evidence was admissible under both Rule 608(b) and Rule 403.

Finally because "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial," the defendant has been prejudiced by the error and the defendant is entitled to a new trial. N.C.G.S. § 15A-1443(a) (1988).

II

[2] In North Carolina "[e]xpert testimony on character . . . is not admissible as circumstantial evidence of behavior." N.C.G.S. § 8C-1,

Rule 405(a) (1992). "Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness"; it is a "person's tendency to act prudently in all the varying situations of life—business, at home, in handling automobiles and in walking across the street." Kenneth S. Broun et al., *McCormick on Evidence* § 195 (Edward W. Cleary ed., 3d ed. 1984). Evidence in the form of expert testimony as to conditions affecting a person's mental condition is not character evidence. *State v. Kennedy*, 320 N.C. 20, 31, 357 S.E.2d 359, 366 (1987) (expert testimony regarding the mental and emotional state of victim is not character evidence); *State v. Heath*, 316 N.C. 337, 341, 341 S.E.2d 565, 568 (1986) (suggesting that testimony from expert with respect to mental condition of victim would not be character evidence); *see State v. Strickland*, 96 N.C. App. 642, 646-48, 387 S.E.2d 62, 63-66 (1990) (allowing expert to testify that victim suffered from Post Traumatic Stress Disorder); *cf. United States v. Roark*, 753 F.2d 991, 994 (1991) (admitting expert testimony as to defendant's susceptibility to coercion).

In this case Dr. Hoover did not seek to provide a "generalized description" of the defendant's "disposition." His testimony instead related to psychological factors affecting the defendant's mental condition and the trial court erred in excluding the testimony on the grounds that it was prohibited character evidence.

As the defendant is entitled to a new trial under Issue I, we do not address whether Dr. Hoover's testimony is otherwise admissible. *See Heath*, 316 N.C. at 340, 316 S.E.2d at 567-68 (holding that expert may not testify as to the credibility of witness); *see also State v. Huang*, 99 N.C. App. 658, 663, 394 S.E.2d 279, 282 (1990) (setting out relevant rules for admissibility of expert testimony).

New trial.

Judges EAGLES and MARTIN, John C., concur.