STATE OF NORTH CAROLINA v. SIMARON DEMETRIUS HILL

No. COA99-976

(Filed 15 August 2000)

**1. Confessions and Incriminating Statements— voluntariness—admonition to tell the truth—witness present during questioning**

The trial court did not err in a prosecution for first-degree kidnapping, attempted rape, two counts of first-degree sexual offense, and robbery with a dangerous weapon, by concluding defendant's statements to police were made freely, voluntarily,

and understandingly, and by denying defendant's motion to suppress written and oral statements made by defendant to law enforcement officers, because: (1) no one had made any promise or inducement to defendant to make a statement; (2) no threats or suggestions of violence were made; (3) even though one of the officers discussed with defendant the necessity for his being truthful, custodial admonitions to an accused to tell the truth standing by themselves do not render a confession inadmissible; and (4) the presence of defendant's friend, who had inculpated defendant, in the room while defendant was being questioned was not so coercive as to overcome defendant's free will and render his statements involuntary, especially in light of the fact that defendant acknowledged his friend made no comments or gestures.

2. **Evidence— motion to suppress—defendant's statement to victim—data form—similar evidence**

The trial court did not err in a prosecution for first-degree kidnapping, attempted rape, two counts of first-degree sexual offense, and robbery with a dangerous weapon, by denying defendant's motion to suppress a statement attributed to him on a data form taken from the victim at the hospital emergency room, because the nurse's reading of the victim's statement from the form at trial did not prejudice defendant where defendant's objection was properly sustained, his motion to strike was allowed, and substantially the same information was presented to the jury through other testimony.

3. **Evidence— pistol—used in crimes**

The trial court did not abuse its discretion in a prosecution for first-degree kidnapping, attempted rape, two counts of first-degree sexual offense, and robbery with a dangerous weapon, by admitting into evidence the pistol allegedly used in these crimes, because the evidence showed that: (1) the victim testified the pistol offered into evidence was similar in appearance to the pistol defendant pointed at her; (2) an officer testified he saw defendant's friend with a .38 pistol in his hand at the mall, the friend told the officer he threw the pistol under the dumpster, and the officer retrieved a .38 pistol under the dumpster; and (3) defendant admitted to the officer that he had a .38 pistol throughout the incident with the victim, and further admitted he had given the pistol to his friend.

**STATE v. HILL**

[139 N.C. App. 471 (2000)]

**4. Kidnapping— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the kidnapping charge even though defendant asserts the confinement, restraint, and removal necessary to convict defendant of kidnapping was inherent in the commission of the robbery with a dangerous weapon, because: (1) defendant forced his way into and took control of the victim's car by threatening her with a pistol, completing the force necessary to commit the robbery; (2) defendant exposed the victim to greater danger than that inherent in the robbery by further restraining her in the car and driving her to an isolated park; and (3) the additional restraint and removal is sufficient to support the element of restraint necessary for his conviction of the separate crime of kidnapping.

**5. Robbery— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the robbery with a dangerous weapon charge even though defendant later abandoned the victim's car a short distance away from the crime, because viewed in the light most favorable to the State, a rational trier of fact could find that defendant, by forcing his way into the victim's car at gunpoint, driving the car to another location, and subsequently forcing the victim out of her car and driving away in it, intended to permanently deprive the victim of her car.

**6. Sexual Offenses— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the two counts of sexual offense and attempted first-degree rape even though there was only a fifteen minute lapse between the time the victim was seen leaving the store and the time police records show the call came in reporting the incident because viewed in the light most favorable to the State, the victim's testimony, the DNA evidence, and defendant's own testimony provide substantial evidence to support these convictions.

**7. Criminal Law— prosecutor's argument—rhetorical question while facing defense counsel**

The trial court did not abuse its discretion in a prosecution for first-degree kidnapping, attempted rape, two counts of first-degree sexual offense, and robbery with a dangerous weapon, by denying defendant's motion for a mistrial made as a result of the prosecutor's closing argument shouting rhetorical questions

while facing in the direction of defense counsel and while hold-
ing the pistol that had been introduced into evidence, because:
(1) the trial court ex mero motu instructed the prosecutor to
direct his argument to the jury even though no objection was
made; and (2) after conducting a hearing, the trial court deter-
mined that while the argument was inappropriate, the case had
been hotly contested and under all the circumstances, defendant
had not been prejudiced by the argument.

Appeal by defendant from judgment entered 5 February 1999 by
Judge Melzer A. Morgan, Jr., in Randolph County Superior Court.
Heard in the Court of Appeals 7 June 2000.

*Attorney General Michael F. Easley, by Assistant Attorney
General Thomas O. Lawton, III, for the State.*

*Robert T. Newman, Sr., for defendant-appellant.*

MARTIN, Judge.

Defendant was tried on proper bills of indictment charging him
with first degree kidnapping, attempted first degree rape, two counts
of first degree sex offense and robbery with a dangerous weapon.
Prior to trial, defendant moved to suppress certain written and oral
statements which he made to law enforcement officers. The trial
court conducted a *voir dire* hearing and, after making oral and
written findings of fact and conclusions of law, denied the motion to
suppress.

Briefly summarized, the State's evidence at trial tended to show
that at approximately 5:00 a.m. on 10 October 1997, the victim, T.H.A.,
went to the Lowe's Food Store in Randolph County. She purchased a
drink inside the store and returned to her car. T.H.A. opened the door
to her car and got in, but when she turned to close the car door,
defendant was between the car and the door so that she could not
close it. He put a gun to her head and told her to move over.
Defendant drove out of the grocery store parking lot to a nearby park,
and parked the car in an unlit area. Defendant demanded money from
T.H.A. After going through her pocketbook three times and not find-
ing any money, defendant told T.H.A. that she would "pay for it."
Defendant pulled down his pants and forced T.H.A. at gunpoint to
perform oral sex on him. He then made her take off her pants and
get on top of him. Defendant attempted to penetrate T.H.A. vaginally,
but was unable to do so. He forced her to perform oral sex on him a

second time. Defendant then instructed T.H.A. to put her clothes back on and get out of the car. He drove away in her car.

Police recovered T.H.A.'s car a short time later. Defendant was recognized and identified from a Lowe's surveillance camera. Defendant's mother told police that defendant was at the shopping mall, and they went there to apprehend him. They first saw Sukari Nettles running with a pistol in his hands. They caught Mr. Nettles, a friend of the defendant, and recovered the pistol. Acting on information from Mr. Nettles, police found defendant in a wooded area behind the mall. Both were taken to the police station. Defendant was advised of his rights, consented to answer questions, and gave statements in which he acknowledged having driven T.H.A. away from the food store after displaying a pistol and having demanded money, but denied any sexual contact.

The State also offered evidence that two swabs were taken from T.H.A.'s mouth, as well as a cutting from the crotch area of her shorts, all of which showed the presence of sperm. Defendant's DNA was present in each of the items.

Defendant testified in his own behalf, admitting that he had encountered T.H.A. on the date in question, but asserting that she had asked to meet him and had offered to provide oral sex in exchange for cocaine, as they had done in the past. He claimed that after she performed oral sex on him, he refused to give her the cocaine. He denied having a pistol and denied giving any statements to the police.

The jury found defendant guilty of all of the charges. Because one of the sexual offenses was used to prove an element of first degree kidnapping, the trial court sentenced defendant as though he had been convicted of second degree kidnapping. Judgments were entered imposing consecutive active sentences of 23 to 37 months for kidnapping, 250 to 309 months for one count of first degree sexual offense, 151 to 191 months for attempted first degree rape, 250 to 309 months for the other count of first degree sexual offense, and 77 to 102 months for robbery with a firearm. Defendant appeals.

Defendant contends the trial court erred (1) by denying his motion to suppress his statements to law enforcement officers, (2) by denying his motion to suppress a statement attributed to him on a data form taken from T.H.A. at the hospital emergency room, (3) by admitting into evidence as State's Exhibit 10 the pistol allegedly used

in these crimes, (4) by denying his motion to dismiss at the conclusion of all the evidence and his motion for appropriate relief due to insufficiency of the evidence, and (5) by denying his motion for mistrial made as a result of the prosecutor's closing argument. For the reasons stated below, we conclude that defendant received a fair trial, free from prejudicial error.

I.

**[1]** First, defendant contends that the trial court erred in denying defendant's motion to suppress written and oral statements alleged to have been made by defendant to law enforcement officers. Defendant first claims that he did not make the statements, and, alternatively, that they were coerced and thus not freely and voluntarily given.

The trial court found, in denying defendant's suppression motion, facts which included:

3. . . . Sometime just before 5:54 p.m. the defendant was placed under arrest . . . . The defendant was advised of what he was being held on. At that point Lt. Mason advised the defendant that he had the right to remain silent, that anything he said could be used against him in a court of law, that he had the right to talk to a lawyer and have a lawyer present while [he was] being questioned, that if he wanted a lawyer during questioning but could not afford to hire one, a lawyer would be appointed to represent him at no cost to him, before any questioning, and that if he answered questions then without a lawyer he still had the right to stop answering questions at any time. These rights were read by then Sgt. Mason to the defendant in a slow manner. At the time, the defendant was alert and coherent. Then Lt. Mason asked the defendant if he understood each of these rights and the defendant said that he did. Lt. Mason wrote "yes" after the question "Do you understand each of these rights I have explained to you?" Then Lt. Mason asked the defendant if he would answer some questions for him then and the defendant initially said "no". Then within a short period of time the defendant changed his mind and said "Yeah, I'll talk. I have nothing to hide." Then Lt. Mason marked out the "no" he had written by the question "Will you answer some questions for me?" and wrote in "yes", which the defendant and Lt. Mason both initialed. Then the defendant signed the form. The defendant was never specifically asked if he wanted to give up his right not to talk. The defendant was never specifically asked if he wanted to give up his right to a lawyer.

Thereafter Lt. Mason advised the defendant of the need for truthfulness . . . . Lt. Mason placed the defendant in leg irons and talked generally with the defendant until sometime around 7:30 p.m. when Sgt. Messenger came in. In the time between the defendant signing the Asheboro Police Department Adult Waiver of Rights form and the time when Sgt. Messenger came in the office, the defendant did not say he wanted a lawyer, nor did he backout (sic) on his willingness to talk with the officers.

4. Sometime after 7:30 p.m., Detective Scott Messenger came into the room where the defendant and Lt. Mason were situated. Detective Messenger asked if Lt. Mason had advised the defendant of his Miranda rights and he was told that the defendant had been so advised. Then Det. Messenger asked the defendant if he understood those rights. The defendant indicted [sic] that he did. Det. Messenger then asked the defendant if he wanted to talk with him. Det. Messenger explained that the defendant did not have to talk to him, that he could remain silent. The defendant indicated that he [was] willing to talk with Det. Messenger. The defendant then began talking in response to Det. Messenger's questions. Under all the circumstances, the defendant impliedly waived his right to remain silent and his right to counsel. Such implied waiver was made freely, knowingly, intelligently, and voluntarily. At the beginning of the questioning, the defendant denied that he had done anything wrong and there was conversation between Nettles and the defendant, back and forth. Det. Messenger believed that if Nettles was in the same room with the defendant that Nettles being there would encourage the defendant to tell what happened. Det. Messenger did not feel that Nettles being there would pressure the defendant. Eventually the defendant made an incriminating oral statement. Then Det. Messenger made a tape recording of questions asked of the defendant. Then defendant was asked to give a written statement. The defendant then wrote out several paragraphs, which he signed.

5. At no time did anyone make any promise, offer of reward or inducement for defendant to make a statement or give up his right to counsel.

6. At no time did anyone make any threat, suggestion of violence, or show of violence which persuaded or induced the defendant to make a statement or give up his right to counsel.

7. At no time during the questioning did the defendant indicate that he desired to stop talking.

8. At no time during the questioning did the defendant indicate that he wished to consult with a lawyer or to have a lawyer present.

From these facts, the trial court concluded defendant had understood his rights, had freely and voluntarily waived those rights, and that his statements were made freely, voluntarily, and understandingly.

"[F]indings of fact made by a trial court following a voir dire hearing on the voluntariness of a confession are conclusive on appellate courts if supported by competent evidence in the record." *State v. Rook*, 304 N.C. 201, 212, 283 S.E.2d 732, 740 (1981), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982). Findings supported by the evidence are binding on appeal even if there is evidence to the contrary. *Id.* However, the legal significance of the facts found by the trial court is a question of law, fully reviewable on appeal. *State v. Jackson*, 308 N.C. 549, 304 S.E.2d 134 (1983).

The standard for admissibility of a criminal defendant's inculpatory statement is whether, under the totality of the circumstances, the statement was made voluntarily and understandingly. *State v. Baldwin*, 125 N.C. App. 530, 482 S.E.2d 1, *disc. review improv. granted*, 347 N.C. 348, 492 S.E.2d 354 (1997). One such circumstance is whether the means employed by the law enforcement officers "were calculated to procure an untrue confession." *Id.* at 533-34, 482 S.E.2d at 4 (quoting *State v. Jackson*, 308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983)). In this case, defendant's sole argument with respect to the admissibility of his statement is that the statements were coerced, and therefore not voluntarily made, because the officers brought Sukari Nettles, who had already inculpated defendant, into the room while defendant was being questioned.

The trial court found that no one had made any promise or inducement to defendant to make a statement, that no threats or suggestions of violence were made. These findings are supported by competent evidence in the record. Though the trial court found that one of the officers had discussed with defendant the necessity for his being truthful, "custodial admonitions to an accused by police officers to tell the truth, standing by themselves, do not render a confession inadmissible." *Rook* at 219, 283 S.E.2d at 744. Nor are we persuaded that Nettles' presence in the room was so coercive as to

**STATE v. HILL**

[139 N.C. App. 471 (2000)]

overcome defendant's free will and render his statements involuntary; neither Nettles nor the officers made any promises or threats to defendant and defendant acknowledged on *voir dire* that Nettles made no comments or gestures. *See State v. Chapman*, 343 N.C. 495, 500, 471 S.E.2d 354, 357 (1996) (officer's placing nine photographs of the murder victim in interrogation room so that defendant would see the photos in every direction he looked did not overbear defendant's free will). The trial court's findings support its conclusion that defendant's statements were made freely, voluntarily, and understandingly. Admission of the statements was not error.

II.

[2] Defendant also moved to suppress evidence of a statement allegedly made by him to the victim at the time of the offenses, which was reported by the victim on the N.C. Sexual Assault Data Form completed by a nurse at the emergency room. Defendant contended, as the basis for the motion, that the statement had not been provided to him in discovery. The trial court found that the substance of the statement had been provided to defendant and denied the motion to suppress, but ruled that the nurse could not read from the form and could use it only to refresh her recollection of statements made to her by the victim.

When the nurse testified, the nurse recounted what T.H.A. had told her and, reading from the form, testified that defendant had told T.H.A., "Don't fight me, I'll kill you right now." Defendant's objection was promptly sustained and his motion to strike was allowed. Where a defendant's objection is sustained and the objectionable testimony is stricken, he has no grounds to assign error. *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991). Moreover, T.H.A. also testified:

Q. Okay. When he put the gun to your head, what did you do then?

A. I moved over.

Q. And did you do anything? Did you scream or—

A. I blowed (sic) the car horn and he told me to stop, if I didn't, he would kill me.

Q. Okay. Did you try to get out the passenger side?

A. Yes.

Q. What happened then?

A. I was trying to get out of the door and he says, don't you try that, and pulled the chamber back on the gun. Pop.

Q. So it was one of those that had slide chamber at the top?

A. Yes. And he said, I'll kill you. He says, won't be the first one I kill and won't be the last one.

Thus, defendant was clearly not prejudiced by the nurse's reading T.H.A.'s statement from the data form. *See State v. Barton*, 335 N.C. 696, 441 S.E.2d 295 (1994) (no prejudice where defendant's objection sustained and substantially same information is presented to jury through other testimony); *see also Quick* at 29, 405 S.E.2d at 196.

III.

[3] Next, defendant assigns error to the admission into evidence of State's Exhibit 10, the pistol allegedly used by him in the commission of the offenses. Defendant contends that there was no foundation and no chain of custody to establish that the pistol offered into evidence was the same pistol as the one used by him.

The State must establish a detailed chain of custody only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered. *State v. Owen*, 130 N.C. App. 505, 503 S.E.2d 426, *disc. review denied*, 349 N.C. 372, 525 S.E.2d 188 (1998). "The trial court possesses and must exercise sound discretion in determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in an unchanged condition." *State v. Taylor*, 332 N.C. 372, 388, 420 S.E.2d 414, 423-24 (1992) (citing *State v. Barfield*, 298 N.C. 306, 259 S.E.2d 510 (1980)). The identification of an item of evidence for the purpose of admission need not be unequivocal. *State v. Stinnett*, 129 N.C. App. 192, 497 S.E.2d 696, *disc. review denied*, 348 N.C. 508, 510 S.E.2d 669, *cert. denied*, 525 U.S. 1008, 142 L. Ed. 2d 436 (1998). Further, any weaknesses in the chain of custody relate only to the weight of the evidence and not to its admissibility. *State v. Sloan*, 316 N.C. 714, 343 S.E.2d 527 (1986). "If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition." McCormick's Handbook of the Law of Evidence § 212 (E. W. Cleary ed. 2d ed. 1972).

"As a general rule weapons may be admitted in evidence 'where there is evidence tending to show that they were used in the commission of a crime.' " *State v. Crowder,* 285 N.C. 42, 46, 203 S.E.2d 38, 41 (1974), *vacated in part on other grounds,* 428 U.S. 903, 49 L. Ed. 2d 1207 (1976) (quoting *State v. Wilson,* 280 N.C. 674, 678, 187 S.E.2d 22, 24 (1972)). In *Crowder,* the defendant argued that a pistol was improperly admitted since it was never identified as the murder weapon. The evidence showed that (1) a police officer found the pistol offered into evidence in a parking lot, four to six parking spaces from where the victim was shot, about one and a half hours later; (2) the parking lot was not searched right away due to crowd control problems; (3) an eyewitness testified that he heard defendant say he had "a .38" just before he shot the victim, and that the pistol offered in evidence resembled the gun he saw the defendant use; and (4) another witness said that she had seen defendant with a pistol which looked like the one offered in evidence within a week or two prior to the killing. The Supreme Court held this evidence sufficient to establish a relevant connection between the pistol and the criminal acts charged, and thus the gun was properly admitted. *Id.* at 47, 203 S.E.2d at 42.

In the present case, T.H.A. testified that the pistol offered into evidence was similar in appearance to the pistol defendant pointed at her on the morning in question. Officer Messenger testified that he saw Sukari Nettles with a .38 pistol in his hand at the mall, that he saw Nettles throw the pistol under a dumpster while fleeing, that Nettles told him that he had thrown the pistol under the dumpster, and that he later retrieved a .38 pistol from under the dumpster. Officer Messenger also testified defendant admitted to him that he had a .38 pistol throughout the incident with T.H.A. and further admitted that he had given the pistol to Nettles. We conclude the evidence was sufficient to show the requisite connection between State's Exhibit 10 and the commission of the charged offenses and the trial court did not abuse its discretion in admitting the pistol into evidence.

IV.

Defendant next argues that the trial court erred in denying his motion to dismiss at the close of all the evidence and in denying his motion for appropriate relief made after the verdicts, because there was insufficient evidence to convict him of all the charges. Defendant presents several issues for our consideration.

A.

**[4]** First, defendant asserts that the confinement, restraint and removal necessary to convict him of kidnapping were inherent in the commission of the robbery with a dangerous weapon. Therefore, he asserts that he cannot be convicted of both the robbery and the kidnapping for the purpose of committing that felony on the basis of the same confinement, restraint and removal.

Defendant is correct that "[i]f the defendant is convicted of other crimes for actions committed against the kidnapped victim, these same actions cannot be used to satisfy . . . [an] element of the kidnapping conviction to elevate the conviction to first degree." *State v. Stinson*, 127 N.C. App. 252, 257, 489 S.E.2d 182, 185 (1997) (citing *State v. Belton*, 318 N.C. 141, 347 S.E.2d 755 (1986)).

Kidnapping is defined in relevant part as follows:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C. Gen. Stat. § 14-39 (1999). Our Supreme Court has noted, in *State v. Irwin*, 304 N.C. 93, 102, 282 S.E.2d 439, 446 (1981), "it was not the legislature's intent in enacting G.S. 14-39(a) to make a restraint which was an inherent, inevitable element of another felony, such as armed robbery or rape, a distinct offense of kidnapping thus permitting conviction and punishment for both crimes." On the facts before that Court, they held that the defendant's forcing the victim at knife point to the back of the store during the attempted robbery was an inherent and integral part of the attempted armed robbery, and was insufficient to support a conviction for a separate kidnapping offense. *Id.*

"The key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping 'exposed [the victim] to greater danger than that inherent in the armed robbery itself, . . . [or] is . . . subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.'" *State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d

STATE v. HILL

[139 N.C. App. 471 (2000)]

555, 561 (1992) (citations omitted). In *Pigott*, evidence showed that defendant first threatened the victim with a gun and then bound his hands. After searching the apartment for money, the defendant came back and bound the victim's hands to his feet and shot the victim in the head. He then continued to search for money. The Court held that "all the restraint necessary and inherent to the armed robbery was exercised by threatening the victim with the gun," so that when defendant bound the victim's hands and feet, he exposed him to greater danger than that inherent in the robbery, and such additional restraint supported the element of restraint necessary for the kidnapping charge. *Id.*

Similarly, in the present case, defendant forced his way into, and took control of, T.H.A.'s car by threatening her with a pistol, completing the force necessary to commit the robbery. By further restraining her in the car and driving her to an isolated park, he exposed her to greater danger than that inherent in the robbery. Such additional restraint and removal is sufficient to support the element of restraint necessary for his conviction of the separate crime of kidnapping.

B.

[5] Defendant next asserts that he cannot be convicted of robbery because there was no evidence that he intended to permanently deprive T.H.A. of her car. When considering a motion to dismiss for insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the offense charged and of defendant being the perpetrator. *State v. Bond*, 345 N.C. 1, 478 S.E.2d 163 (1996), *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997). The court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *Id.*

Robbery is defined as " 'the taking with intent to steal, of the personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation.' " *State v. Lunsford*, 229 N.C. 229, 231, 49 S.E.2d 410, 412 (1948) (quoting Justine Miller, *Handbook of Criminal Law* § 123 (1934)). In the present case, considering the evidence in the light most favorable to the State, a rational trier of fact could find that defendant, by forcing his way into the victim's car at gunpoint, driving the car to another location, and subsequently forcing the victim out of her car and driving away in it, intended to permanently deprive the victim of her car.

The fact that defendant later abandoned the car a short distance away is not dispositive of the intent issue.

> When, in order to serve a temporary purpose of his own, one takes property (1) with the specific intent wholly and permanently to deprive the owner of it, or (2) under circumstances which render it unlikely that the owner will ever recover his property and which disclose the taker's total indifference to his rights, one take's it with intent to steal (animus furandi).

*State v. Smith*, 268 N.C. 167, 173, 150 S.E.2d 194, 200 (1966). " '[An] intent to deprive the owner of his property permanently, or an intent to deal with another's property unlawfully in such a manner as to create an obviously unreasonable risk of permanent deprivation, [is] all that is required to constitute the *animus furandi*—or intent to steal.' " Black's Law Dictionary, at p. 87 (7th ed. 1999) (citations omitted). We find no merit to defendant's argument that there is insufficient evidence to establish the element of intent to permanently deprive T.H.A. of her car; there was sufficient evidence to sustain his conviction of robbery with a dangerous weapon.

## C.

**[6]** Defendant also contends there is insufficient evidence to convict him of the two counts of sexual offense and attempted first degree rape because the events could not have happened as the victim related them. Defendant argues that there was only a fifteen minute lapse between the time that the victim was seen leaving the grocery store on the surveillance tape and the time police records show the call came in reporting the incident. As we have previously stated, it is well settled that

> [w]hen measuring the sufficiency of the evidence, direct or circumstantial, competent or incompetent, the evidence must be considered in the light most favorable to the State. The State must be given the benefit of every reasonable inference to be drawn from the evidence and any contradiction in the evidence are to be resolved in favor of the State.

*State v. Bell*, 338 N.C. 363, 388, 450 S.E.2d 710, 724 (1994), *cert. denied*, 515 U.S. 1163, 132 L. Ed. 2d 861 (1995). Given T.H.A.'s testimony, the DNA evidence and defendant's own testimony, there was substantial evidence to support defendant's conviction of attempted rape and each of the sexual offense charges.

STATE v. HILL

[139 N.C. App. 471 (2000)]

## V.

[7] Finally, defendant argues that he should have been granted a mistrial due to grossly improper remarks by the prosecutor during closing arguments. The arguments were not recorded, but the trial court made findings that during the closing arguments, the prosecutor approached the defense table and, in a loud voice, shouted questions in the direction of defense counsel, apparently in response to an argument advanced by defense counsel in his summation, questioning the victim's actions after the events. The prosecutor shouted rhetorical questions such as "Wouldn't you have wanted to smoke a cigarette, too?", and "How would you like to have to perform oral sex?", while facing in the direction of defense counsel. At the time, the prosecutor was also brandishing the pistol, which had been introduced into evidence, and was apparently agitated. No objection was made to the argument, but the trial court *ex mero motu* instructed the prosecutor to direct his argument to the jury. The following morning, prior to the jury instructions, defense counsel moved for a mistrial. After hearing the positions of both counsel, the trial court determined that while the argument was inappropriate, the case had been hotly contested and, under all the circumstances, defendant had not been prejudiced by the argument. The motion for mistrial was denied, but the trial court instructed the jury to disregard the argument. Defendant assigns error.

Though counsel are permitted wide latitude in the scope of their jury argument, our Supreme Court has observed in *State v. Holmes*, 296 N.C. 47, 50, 249 S.E.2d 380, 382 (1978) that it is a prosecutor's duty to the State which he represents and to the court as its officer "to exercise proper restraint so as to avoid misconduct, unfair methods, or overzealous partisanship which would result in taking unfair advantage of an accused."

> The conduct of a trial and the prevention of unfair tactics by all connected with the trial must be left in a large measure to the discretion of the trial judge, and it is the duty of the trial judge to intervene when remarks of counsel are not warranted by the evidence and are calculated to prejudice or mislead the jury (citations omitted).

*Id.* In the present case, though no objection was made to the prosecutor's improper argument, the trial court promptly intervened and admonished counsel to address his remarks to the jury rather than

defense counsel. Thereafter, the court instructed the jury to disregard the improper argument.

Where no objection is made to a prosecutor's improper argument, appellate review is limited to the question of whether the improprieties were so gross as to require the trial judge to intervene *ex mero motu*, as the trial judge did in this case. *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). A curative instruction to the jury to disregard the improper argument ordinarily cures the impropriety. *State v. Rupard*, 299 N.C. 515, 263 S.E.2d 554 (1980).

Having intervened to stop the improper argument, the decision to grant or deny a defendant's subsequent motion for mistrial was vested in the trial court's sound discretion. *State v. Bonney*, 329 N.C. 61, 405 S.E.2d 145 (1991). " 'A mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict.' " *State v. Warren*, 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990) (quoting *State v. Laws*, 325 N.C. 81, 105, 381 S.E.2d 609, 623 (1989)); *see* N.C. Gen. Stat. § 15A-1061 (1999). Consequently, a trial court's decision concerning a motion for mistrial will not be disturbed on appeal unless there is a clear showing that the trial court abused its discretion. *Warren, supra.*

In this case, the trial judge who heard the argument and knew the atmosphere of the trial, carefully considered the circumstances before concluding "the Court does not feel that the defendant was prejudiced by the argument; that he's not been denied a fair trial." We cannot say that the improper argument was so grossly prejudicial on its face as to entitle defendant to a mistrial as a matter of law, or that the trial judge's denial of the motion was not the result of a reasoned decision, especially in light of the curative instructions given the jury. Therefore, we find no abuse of discretion and no error in the denial of defendant's motion for mistrial.

Defendant received a fair trial, free from prejudicial error.

No error.

Judges WYNN and McGEE concur.