STATE OF NORTH CAROLINA v. VEARL ACKERMAN

No. COA00-672

(Filed 3 July 2001)

## 1. Kidnapping— first-degree—motion to dismiss

The trial court erred by denying defendant's motion to dismiss the charge of first-degree kidnapping under N.C.G.S. § 14-39(a)(2), because: (1) the evidence failed to show confinement or restraint in the victim's vehicle beyond that required to establish the crime of first-degree sexual offense; and (2) there was no asportation of the victim.

## 2. Sexual Offenses— first-degree—infliction of serious personal injury

The trial court did not commit plain error by instructing the jury on first-degree sexual offense based on the employment of a dangerous weapon or the infliction of serious personal injury, because: (1) the photographic evidence revealed three bite marks, a thumb print, scab, and swelling on the victim's neck as the result of being choked, and many bruises and swelling about the victim's face, head, neck, chest, and knees resulting from blows from a full beer bottle and defendant's hands; (2) the victim showed the jury scars on her arm left by defendant's bites; and (3) the victim testified about a blow by defendant's hand on her ear and how she still thinks about the incident every day of her life.

## 3. Assault— on a female—motion to dismiss

The trial court did not err by denying defendant's motion to dismiss the charge of assault on a female even though defendant contends the State failed to present evidence that defendant was over the age of eighteen as required by N.C.G.S. § 14-33(c)(2), because: (1) the jury had ample opportunity to observe defendant in the courtroom for the duration of the trial; and (2) the jury was presented circumstantial evidence of defendant's regular patronage at a bar from which the jury could conclude that defendant was over eighteen years of age.

## 4. Criminal Law— prosecutor's argument—explanation for incident

The trial court did not commit plain error by allowing the prosecution to make a statement in its opening argument

allegedly drawing attention to the likelihood that defendant would not testify and that allegedly attempted to shift the burden of proof to defendant, because: (1) at no time during the opening argument did the prosecutor affirmatively state, or even infer, that defendant will not testify; and (2) the prosecutor merely stated the jury will not hear a plausible explanation for why the incident occurred, other than the defense's claim that the victim may have been to blame.

**5. Sexual Offenses— first-degree—short-form indictment**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree sexual offense based on an alleged insufficiency of the short-form indictment to distinguish a first-degree sexual offense from a second-degree sexual offense, because the indictment complied with the statute and the North Carolina and United States Constitutions.

Appeal by defendant from judgment entered 8 December 1999 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 April 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Mark J. Pletzke, for the State.*

*Assistant Public Defender Marc D. Towler for defendant.*

TYSON, Judge.

Vearl Ackerman ("defendant") appeals a judgment entered upon convictions of first-degree sexual offense, first-degree kidnapping, assault on a female, assault with a deadly weapon, injury to personal property, and communicating threats. The convictions were consolidated for judgment, and the trial court sentenced defendant to a minimum of 307 months and a maximum of 378 months' imprisonment. We reverse defendant's conviction for first-degree kidnapping. We find no error in the judgment entered on all other charges.

Facts

Defendant and the prosecuting witness, Cathy Hill Cook ("Cook"), were involved in a brief romantic relationship from April to June 1998. Defendant and Cook did not see each other from June until September 1998. On 26 September 1998, defendant telephoned Cook to invite her to dinner at his home. Cook arrived at defendant's apartment around 7:00 p.m. during her work break. Two mutual

friends of defendant and Cook were present at defendant's home. The four had a conversation about a band that was to perform that evening at a local bar, the Comet Grill. Defendant stated that he intended to go. The friends were unsure if they would attend.

The friends left defendant's apartment after Cook finished eating dinner. Cook testified that defendant began to kiss her and make sexual advances toward her when they were alone. Cook rebuked defendant's advances, upon which defendant told Cook to leave. Cook left, and returned to work.

At approximately 11:00 p.m. that evening, Cook arrived at the Comet Grill. She parked her vehicle across the street from the bar, in a parking lot adjacent to defendant's apartment. Cook entered the bar, and did not see the mutual friends who had been with her and defendant earlier that evening. Defendant was at the bar. Cook ordered a glass of wine, and spoke with defendant for a few minutes.

Subsequently, Cook went outside to speak with some friends, including a male friend. Cook testified that defendant came outside and told her to "get [her] butt back inside." When Cook re-entered the bar, defendant "grabbed [her] by the collar" and told her that she had "embarrassed him" and that she needed to "sit down and shut up or else."

Shortly thereafter, Cook attempted to leave the bar. Cook testified that defendant physically grabbed her, pushed her into the bar, and ordered her to pay the bill. Cook testified she just "grabbed a handful of money out of [her] pocket and handed it to [defendant] and left." Cook testified that she left the bar alone, and went to her vehicle, parked across the street. Cook entered her vehicle and began to drive out of the parking lot.

Cook testified that defendant ran towards her vehicle and jumped inside through the open driver's side window. While inside the vehicle, defendant kicked the key until it broke off in the ignition. Defendant also kicked the gear shift into the park position. Cook testified that she reached for the door handle to exit the vehicle, but that defendant "grabbed [her] hand and . . . bit [her] really hard" and "wouldn't let go." Cook further testified that defendant then beat her with a full beer bottle about the head, face, chest, side, knees, and back.

Cook further testified that defendant held the beer bottle at her throat and told her he was "going to kill [her]," and that she was

STATE v. ACKERMAN

[144 N.C. App. 452 (2001)]

"going to die tonight." Defendant continued to choke Cook and beat her with the bottle, stating that she was going to die "for everything that [she'd] done," and that she would "never see [her] kids again." Cook testified that she tried to exit the vehicle, but that defendant was physically restraining her. She stated, "if I fought him, it got worse."

Cook stated that she pretended to pass out so that defendant would cease beating her. She testified that she let her head fall over into defendant's lap as though she were unconscious. Defendant unzipped his pants and forced his penis into Cook's mouth. Cook testified that defendant then slammed his hand onto her ear so hard that she sat upright. Defendant then began to choke Cook with both hands, pushing her back between the vehicle seats. Cook testified that when she was at the point where she could no longer breathe, defendant stopped choking her and stated, "I'm not going to kill you now. First I'm going to beat you some more and I'm going to break this bottle and cut your face up; and, I'm going to rape you . . . tonight we're going to die together."

Cook testified that defendant picked her up and put her on top of him, stating that he was going to rape her. At this point, Cook opened the driver's side door and "fell out" of the vehicle. She ran towards the Comet Grill. Defendant continued to shout "I will kill you . . . I know where you live."

Cook ran into the bar screaming that defendant had beat her and tried to kill her. The bar owner, Jenny Wicker ("Wicker"), estimated that 45 minutes had lapsed between the time Cook initially left the bar and when she returned. Wicker testified that Cook was "hysterical and disheveled" and "asked if someone would take her home." Either Wicker or her husband called 911. The fire department was the first to respond to the call. Cook testified that the fire department wanted her to go to the hospital, but she told them that she wanted to talk to the police first.

Cook waited at the bar for the police to arrive, whereupon she told the officers what had transpired. Cook's daughter also arrived at the scene. The officers were able to start Cook's car with a pair of pliers. Cook's daughter then drove Cook to the hospital. The two waited in the hospital emergency room approximately two hours. Cook testified that at 5:00 a.m., she "had enough and just wanted to go home." She left the hospital without seeing a doctor and visited her physician the next day.

The State introduced several photographs of bite marks, scars, swelling, and bruises Cook sustained in the struggle with defendant. Cook testified that she continues to think about the incident "everyday of [her] life and every night." Cook stated that she is in therapy to help her deal with the incident.

Defendant moved to dismiss all charges at the close of the State's evidence. The trial court denied the motions. Defendant did not present any evidence. Defendant renewed his motions to dismiss at the close of all evidence, which motions were denied.

On 8 December 1999, the jury returned guilty verdicts as to all charges: first-degree sexual offense; first-degree kidnapping; assault on a female; assault with a deadly weapon; injury to personal property; and communicating threats. The trial court entered judgment thereon on 8 December 1999. Defendant appeals.

---

Defendant argues that the trial court erred: (1) in denying his motion to dismiss the charge of first-degree kidnapping; (2) by instructing the jury on first-degree sexual offense based on the infliction of serious personal injury; (3) by denying defendant's motion to dismiss the charge of assault on a female; (4) in allowing the prosecution to make a statement in its opening argument about defendant's evidence; and (5) in denying defendant's motion to dismiss the charge of first-degree sexual offense for insufficiency of the short-form indictment. We agree with defendant that failure to dismiss the charge of first-degree kidnapping was error. We find no error as to all other issues.

## A. First-degree kidnapping

[1] Defendant argues that the trial court erred in denying his motion to dismiss the charge of first-degree kidnapping. Specifically, defendant argues the evidence failed to show confinement or restraint beyond that required to establish the crime of first-degree sexual offense. We agree.

First-degree kidnapping requires the unlawful restraint or confinement of a person for the purpose of committing a felony. N.C. Gen. Stat. § 14-39(a)(2). It was not the legislature's intent, however, "to make a restraint which was an inherent, inevitable element of another felony, such as armed robbery or rape, a distinct offense of kidnapping thus permitting conviction and punishment for both crimes." *State v. Irwin*, 304 N.C. 93, 102, 282 S.E.2d 439, 446 (1981).

The restraint required for kidnapping must be an act independent of the intended felony. *State v. Harris*, 140 N.C. App. 208, 213, 535 S.E.2d 614, 617, *appeal dismissed, disc. review denied*, 353 N.C. 271, 546 S.E.2d 122 (2000) (citation omitted); *State v. Fulcher*, 294 N.C. 503, 524, 243 S.E.2d 338, 352 (1978).

"The test of the independence of the act is 'whether there was substantial evidence that the defendant[ ] restrained or confined the victim separate and apart from any restraint necessary to accomplish the acts of rape [, statutory sex offense, or crime against nature].' " *Harris* at 213, 535 S.E.2d at 618 (quoting *State v. Mebane*, 106 N.C. App. 516, 532, 418 S.E.2d 245, 255, *disc. review denied*, 332 N.C. 670, 424 S.E.2d 414 (1992)). The restraint or asportation of the victim must be a complete act, separate from the sexual assault. *State v. Coats*, 100 N.C. App. 455, 459-60, 397 S.E.2d 512, 515-16 (1990), *disc. review denied*, 328 N.C. 573, 403 S.E.2d 515 (1991) (citation omitted); *see also State v. Walker*, 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987) (while some restraint is inherent in a sexual assault, there must be some separate, independent restraint, confinement, or asportation of the victim in order to constitute kidnapping).

Thus, in *Harris*, we held that restraint independent of the underlying felony was present where the defendant fraudulently coerced the victim into remaining with him in a car so that he could drive her to a secluded place and sexually assault her. *Harris*, 140 N.C. App. at 213, 535 S.E.2d at 618.

In *State v. Hill*, 139 N.C. App. 471, 482, 534 S.E.2d 606, 614 (2000), we recently held that independent restraint supporting a conviction for kidnapping was present where, after completing the restraint necessary to rob the victim, the defendant then drove the victim to an isolated area. We stated,

> [D]efendant forced his way into, and took control of, T.H.A.'s car by threatening her with a pistol, completing the force necessary to commit the robbery. By further restraining her in the car and driving her to an isolated park, he exposed her to greater danger than that inherent in the robbery. Such additional restraint and removal is sufficient to support the element of restraint necessary for his conviction of the separate crime of kidnapping.

*Id.* at 483, 534 S.E.2d at 614; *see also State v. McKenzie*, 122 N.C. App. 37, 46, 468 S.E.2d 817, 824-25 (1996) (separate and independent restraint found where defendant grabbed victim in front hallway,

took victim to bedroom, bound her hands, covered her head with a pillowcase, shut blinds, and rummaged through apartment prior to rape: "[i]t is apparent then that the asportation of the victim from the hallway to the bedroom and her confinement prior to the rape, was an effort on the part of defendant to conceal his identity and facilitate the commission of the independent acts of larceny and robbery."); *Walker*, 84 N.C. App. at 543, 353 S.E.2d at 247 ("[a]sportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetuated the offense when he first threatened the victim and instead took the victim to a more secluded area to prevent others from witnessing or hindering the rape.").

In contrast, in the present case, there was no restraint "separate and apart" from Cook's confinement in the vehicle, and that required for defendant to commit the sexual offense. There was no asportation of Cook, all events having taken place in the front seat of Cook's vehicle, and across the street from the Comet Grill. Cook voluntarily entered her vehicle. Defendant entered the vehicle by jumping through the open window while Cook was seated in the vehicle. The evidence does not show confinement beyond defendant's preventing Cook from escaping the vehicle. Cook's restraint in the vehicle was necessary for defendant to commit the sexual offense. The restraint was an inherent part of the commission of the sexual offense, and cannot be used to convict defendant of kidnapping.

We note that the sexual assault comprised only a small portion of the total time that Cook and defendant were in the vehicle. However, there was no evidence that defendant took any additional steps to move Cook to another location or otherwise further restrain her. Absent such evidence, defendant's actions do not rise to the level required for first-degree kidnapping. "The test . . . does not look at the restraint necessary to commit an offense, rather the restraint that is inherent in the actual commission of the offense." *State v. Williams*, 308 N.C. 339, 347, 302 S.E.2d 441, 447 (1983). The *Williams* court determined that the defendant restrained the victim beyond what was inherent in the crime of rape:

> The evidence in this case reveals that the defendant restrained the victim for a period of several hours in her home. During that time the defendant forced the victim to sit in the living room and to accompany him to the kitchen so that the defendant could get something to drink. Neither of these restraints is inherent in the crime of rape. As a result, there was substantial evidence of

restraint to support the conviction of kidnapping separate and apart from the restraint inherent in the crime of rape.

*Id.*; *see also State v. White*, 127 N.C. App. 565, 571, 492 S.E.2d 48, 51 (1997) ("the offense of kidnapping under N.C. Gen. Stat. § 14-39 is a single continuing offense, lasting from the time of the initial unlawful confinement, restraint or removal until the victim regains his or her free will.").

No such independent, separate restraint occurred in this case. Defendant's continuous confinement of Cook in the vehicle was the restraint inherent in his commission of the sexual offense. Defendant's conviction for first-degree kidnapping must be reversed.

### B. Instruction on first-degree sexual offense

[2] Defendant next argues that the trial court erred in instructing the jury on first-degree sexual offense based either on the employment of a dangerous weapon, or the infliction of serious personal injury upon Cook. Defendant alleges that the evidence was insufficient to support an instruction based on the infliction of serious personal injury. In so arguing, defendant notes that Cook initially declined to go to the hospital, stating that she wanted to first speak to the police; that Cook left the hospital at 5:00 a.m. that morning without having seen a doctor; and that the prosecutor took a dismissal on the charge of assault inflicting serious injury at the close of the evidence.

Defendant acknowledges in his brief that he failed to object to the trial court's instruction at trial. A defendant who fails to object at trial bears the burden of proving that the trial court committed "plain error." *State v. Reaves*, 142 N.C. App. ——, ——, 544 S.E.2d 253, 255 (2001). A ruling of the trial court will be found to be plain error "only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). We find no such error in this case.

Our General Assembly has determined that a second-degree sexual offense is elevated to first degree if serious personal injury is inflicted on the victim. N.C. Gen. Stat. § 14-27.4; 14-27.5. "Our courts

have 'declined to attempt to define the substance of the phrase 'serious [personal] injury' and [have instead] adopted the rule . . . '[w]hether such serious injury has been inflicted must be determined according to the particular facts of each case.' " *State v. Lilly*, 117 N.C. App. 192, 194, 450 S.E.2d 546, 548 (1994), *affirmed*, 342 N.C. 409, 464 S.E.2d 42 (1995) (quoting *State v. Boone*, 307 N.C. 198, 204, 297 S.E.2d 585, 589 (1982)).

Injuries sufficient to constitute "serious personal injury" have been held to include: "a bruised and swollen cheek, a cut lip, and two broken teeth," *State v. Jean*, 310 N.C. 157, 170, 311 S.E.2d 266, 273 (1984); bruises to a victim's rectal area, *Lilly* at 195, 450 S.E.2d at 548; a whiplash injury resulting in leg cramps and requiring two visits to a doctor, *State v. Ferguson*, 261 N.C. 558, 560, 135 S.E.2d 626, 628 (1964); and blows resulting in five teeth being knocked out of alignment and a broken tooth root, *State v. Roberts*, 293 N.C. 1, 15, 235 S.E.2d 203, 212 (1977). Moreover, our Supreme Court has held that "serious personal injury" in this context may also include mental injury. *Boone*, 307 N.C. at 204, 297 S.E.2d at 589.

In *State v. Easterling*, 119 N.C. App. 22, 457 S.E.2d 913, *disc. review denied*, 341 N.C. 422, 461 S.E.2d 762 (1995), we interpreted *Boone*:

> We do not read *Boone* as placing an additional burden on the State to show a mental injury must be more than that normally experienced in every forcible rape in addition to showing the mental injury extended for some appreciable time, as defendant suggests. Rather, we read *Boone* as holding that if a mental injury extends for some appreciable time, it is therefore a mental injury beyond that normally experienced in every forcible rape. See *id*, 307 N.C. at 205, 297 S.E.2d at 590 (because only evidence of rape victim's condition was that she was hysterical in morning hours of day crime was committed, and no evidence of residual injury after morning of crime, insufficient evidence for serious personal injury); *State v. Baker*, 336 N.C. 58, 65, 441 S.E.2d 551, 555 (1994) (serious mental injury where rape victim's depression, loss of appetite and weight, counseling, nightmares, and insomnia continued for twelve months after rape); *State v. Davis*, 101 N.C. App. 12, 23, 398 S.E.2d 645, 652 (1990) (serious personal injury where victim suffered from physical pain, appetite loss, severe headaches, nightmares, and difficulty sleeping lasted for at least eight months), *appeal dismissed & disc. rev. denied*, 328 N.C.

574, 403 S.E.2d 516 (1991); *State v. Mayse*, 97 N.C. App. 559, 563-64, 389 S.E.2d 585, 587 (serious mental injury where victim's mental and emotional injuries continued for at least seven months after rape; victim quit work, quit school, moved from home, sought professional help), *disc. rev. denied*, 326 N.C. 803, 393 S.E.2d 903 (1990).

*Id.* at 40-41, 457 S.E.2d 923-24.

In this case, the State introduced several photographs illustrating the injuries Cook sustained in the struggle with defendant. The photographs depicted three bite marks, a thumb print, scab, and swelling on Cook's neck as a result of being choked, and many bruises and swelling about Cook's face, head, neck, chest and knees resulting from blows from a full beer bottle and defendant's hands. Cook testified that when she attempted to exit the vehicle, defendant "bit [her] really hard" and "wouldn't let go." Cook showed the jury scars on her arm left by defendant's bites.

Cook further testified that a blow by defendant's hand on her ear was "so hard" that now "when [she] hear[s] the radio or anything, [her] ear goes . . . like a broken record—broken speaker." Cook testified that "everyday of [her] life and every night" she still thinks of the incident. Cook testified she has dreams every night about the incident, and is still receiving therapy as a result of the incident, some 15 months after its occurrence.

In light of the combination of evidence of Cook's physical and mental injuries, we hold that her injuries were "serious personal injuries" and the trial court's instruction was proper. This assignment of error is overruled.

## C.  Assault on a female

[3] Defendant assigns error to the trial court's denial of his motion to dismiss the charge of assault against a female. Defendant argues that the State failed to present evidence that defendant was over the age of 18, a required element of the offense. N.C. Gen. Stat. § 14-33(c)(2).

In *State v. Evans*, 298 N.C. 263, 267, 258 S.E.2d 354, 356, (1979), *overruled on other grounds, State v. Barnes*, 324 N.C. 539, 380 S.E.2d 118 (1989), our Supreme Court noted that "[w]hile it is true that one of the elements of assault on a female is that the defendant be more than 18 years old, the jury may look upon a person and estimate his age . . . . The jury had ample opportunity to view the defendant in this

case and estimate his age." *Id.* (citations omitted); *see also, State v. Samuels*, 298 N.C. 783, 787, 260 S.E.2d 427, 430 (1979) (element of first degree rape that defendant be more than 16 years old satisfied where "jury had ample opportunity to view the defendant and estimate his age.").

More recently, this Court distinguished such prior cases, and held that a jury should not "determine the age of a criminal defendant beyond a reasonable doubt merely by observing him in the courtroom without having the benefit of other evidence, whether circumstantial or direct." *In re Jones*, 135 N.C. App. 400, 405, 520 S.E.2d 787, 789 (1999).

Here, the jury had ample opportunity to observe defendant in the courtroom for the duration of the trial. In addition, the jury was presented with circumstantial evidence from which, in addition to observing defendant, they could conclude that defendant was over 18 years of age. The State introduced evidence that defendant had been involved in a romantic relationship with Cook, age 43; that defendant "was a regular" at the Comet Grill bar; that Wicker, the bar owner, knew defendant as a customer in her bar; and that defendant purchased and drank alcoholic beverages at the bar on the evening in question.

A person must be 21 years of age to purchase or consume alcohol in this State. *See* N.C. Gen. Stat. § 18B-302. The circumstantial evidence of defendant's regular patronage of a bar and consumption of alcohol is sufficient evidence from which a jury, in addition to observing defendant, could conclude defendant was over 18 years of age. We find no error in light of this evidence.

### D. Prosecutor's opening statement

[4] Defendant argues that the trial court committed plain error in failing to intervene and prevent statements made by the prosecutor during the State's opening statement. Defendant argues that the prosecutor inappropriately called "attention to the likelihood that defendant would not testify," and "attempted to shift the burden of proof to the defense." We disagree.

Each party in a criminal jury trial has the opportunity to make a brief opening statement. N.C. Gen. Stat. § 15A-1221(a)(4). "The purpose of an opening statement is to set forth a 'general forecast' of the evidence. *State v. Allred*, 131 N.C. App. 11, 16, 505 S.E.2d 153, 156 (1998) (citation omitted).

"Counsel for the parties may not, however, '(1) refer to inadmissible evidence, (2) 'exaggerate or overstate' the evidence, or (3) discuss evidence [they] expect[ ] the other party to introduce.' " *Id.* (quotation omitted). The parties are generally given "wide latitude" in the scope of an opening statement. *State v. Summerlin,* 98 N.C. App. 167, 171, 390 S.E.2d 358, 360, *disc. review denied,* 327 N.C. 143, 394 S.E.2d 183 (1990). Such scope is within the sound discretion of the trial court. *Allred* at 16, 505 S.E.2d at 156.

Defendant objects to the following statement made by the prosecutor during opening statements:

I'll tell you what you're not going to hear. You're not going to hear a plausible, reasonable explanation, given by the defense, as to why this terrible event happened. All you're going to hear from them is for them to point their finger at [Cook], and blame her and ask her why she was there in the first place.

Defendant argues that this statement "constituted not only an improper comment on [defendant's] expected failure to testify but also an attempt to shift the burden of proof to the defendant."

At no time during the opening argument does the prosecutor affirmatively state, or even infer, that defendant will not testify. The prosecutor merely states that the jury will not hear a plausible explanation for why the incident occurred, other than Cook may have been to blame. Such a statement does not, (1) refer to inadmissible evidence, (2) exaggerate or overstate any evidence, or (3) discuss the evidence that the defense had planned to introduce. *Allred* at 16, 505 S.E.2d at 156. Nor do we read the prosecutor's statement as unfairly shifting the burden of proof to defendant.

Defendant has failed to show that this statement was "so basic, so prejudicial, so lacking in its elements that justice cannot have been done," given the "wide latitude" afforded the scope of such opening statements and the trial court's ample discretion to determine this scope. *See Odom,* 307 N.C. at 660, 300 S.E.2d at 378 (noting standard of plain error review); *see also State v. Jaynes,* 342 N.C. 249, 281, 464 S.E.2d 448, 468 (1995), *cert. denied, Jaynes v. North Carolina,* 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996) (no prejudice in opening statement that defendant "[o]f course . . . has come here and pled not guilty, denies this offense, and by that plea says that he doesn't know anything about these charges or offenses and didn't have anything to do with it."); *State v. Paige,* 316 N.C. 630, 648, 343 S.E.2d 848, 859 (1986) (permissible for counsel in opening statement to state that the

defendant "would rely on the presumption of innocence."). We overrule this assignment of error.

### E. Short-form indictment

[5] Finally, defendant argues that the trial court erred in failing to dismiss the first-degree sexual offense indictment because the short-form indictment used violated defendant's Sixth Amendment rights and his right to due process. Defendant failed to object to the form of the indictment at trial. However, where an indictment is alleged to be invalid on its face, depriving the trial court of its jurisdiction, a challenge may be made at any time. *State v. Wallace*, 351 N.C. 481, 503, 528 S.E.2d 326, 341 (2000), *cert. denied, Wallace v. North Carolina*, —— U.S. ——, 148 L. Ed. 2d 498, *reh'g denied*, —— U.S. ——, 148 L. Ed. 2d 784 (2001).

Defendant argues that the sexual offense short-form indictment was constitutionally insufficient in that it failed to allege the elements that distinguish a first-degree sexual offense from a second-degree sexual offense. An identical argument was recently rejected by our Supreme Court. *See Wallace* at 505, 528 S.E.2d at 342. The short-form indictment used in *Wallace* contained the exact language as defendant's indictment here; specifically, that on or about the date alleged, defendant "did unlawfully, wilfully and feloniously with force and arms engage in a sexual act with [victim's name], by force and against the victims will." *Id.* at 505, 528 S.E.2d at 341-42. Our Supreme Court held that the indictment complied with the statute authorizing short-form indictments for a sexual offense, and that such indictments "have been held to comport with the requirements of the North Carolina and United States Constitutions." *Id.* at 505, 528 S.E.2d at 342 (citing *State v. Randolph*, 312 N.C. 198, 210, 321 S.E.2d 864, 872 (1984); *State v. Lowe*, 295 N.C. 596, 604, 247 S.E.2d 878, 883-84 (1978)). This assignment of error is overruled.

For the reasons stated, we hold that defendant's kidnapping conviction in 99 CRS 109538 must be reversed. The judgment is vacated and remanded for re-sentencing. In all other respects defendant received a fair trial free from prejudicial error. As to the remaining judgments, we find no error.

No error in part; reversed in part; judgment vacated in 99 CRS 109538; remanded for re-sentencing.

Judges WALKER and HUNTER concur.