An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1461

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

v.

McDowell County
No. 12 CRS 1514

BARBARA ANN BARR

Appeal by defendant from judgment entered 28 June 2013 by Judge Gary Gavenus in McDowell County Superior Court. Heard in the Court of Appeals 23 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Benjamin J. Kull, for the State.*

> *Gilda C. Rodriguez for Defendant.*

ERVIN, Judge.

Defendant Barbara Ann Barr appeals from a judgment sentencing her to a term of 45 days imprisonment and ordering her to pay a fine and the costs based upon her conviction for misdemeanor larceny. On appeal, Defendant contends that the trial court erred by rejecting the plea agreement that she had reached with the State without providing any explanation for its decision to act in that manner and that Defendant was provided ineffective assistance of counsel as the result of her trial

counsel's failure to assert her right to obtain an explanation of the trial court's decision to reject the negotiated plea and to have her case continued following the rejection of her guilty plea. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that the trial court's judgment should be vacated given that the criminal pleading upon which the trial court's judgment rests was fatally defective.

## I. Factual Background

### A. Substantive Facts

#### 1. State's Evidence

On the afternoon of 24 October 2012, Defendant entered a Walmart store in Marion, North Carolina, along with a male adult and a young child. Brandy Bartlett, who worked as a loss protection assistant at the store, initially noticed Defendant because she was carrying a large pocketbook and an empty diaper bag and was engaging in behavior that suggested that she might be involved in unlawful conduct. After making this initial observation, Ms. Bartlett continued to watch Defendant closely and even came within a few feet of her.

While she watched Defendant, Ms. Bartlett noticed that Defendant had put a pack of highlighters and an iPhone case in her shopping cart. In addition, Ms. Bartlett noticed that the

adult male who was accompanying Defendant had picked up a camera and placed it in the diaper bag. Subsequently, Defendant took the child, along with the diaper bag, into a restroom, where the two of them remained for approximately five minutes.

After Defendant exited the restroom, she handed the child to her male companion, went to a different aisle, and picked up a set of artificial toenails. Eventually, Ms. Bartlett observed Defendant place the artificial toenails, iPhone case, and highlighters into her pocketbook and walk to the cash register. At that point, Defendant's male companion left the store with the diaper bag and child while Defendant paid for other items that she had taken into her possession during her time in the store.

After paying for these additional items, Defendant walked through the first set of doors leading to the exterior of the store building, where she encountered Ms. Bartlett, who told Defendant what she had observed. After Defendant denied having engaged in any misconduct, Ms. Bartlett stated that she was aware that Defendant had items in her purse for which she had not paid, that she had no desire to embarrass Defendant, and that Defendant should accompany her to the store office. At that point, Defendant did as Ms. Bartlett had requested.

After Defendant and Ms. Bartlett reached the office, Ms. Bartlett, in the presence of her assistant manager, told Defendant that she needed to remove the items that she had taken from the store without making payment from her pocketbook. At that point, Defendant produced the highlighters, the iPhone case, and the artificial toenails while claiming that she had gotten the toenails from a Family Dollar store at an earlier time. After Defendant stated that she did not have identification, Ms. Bartlett told Defendant that she was required to call the police.

Sergeant Mike Hensley of the Marion Police Department arrived at the Walmart store at approximately 4:30 p.m. Although Sergeant Hensley saw the items that Defendant had removed from her pocketbook, he did not search or interview Defendant. After Ms. Bartlett created a receipt indicating the total value of the items in question and confirmed that the items were included in the Walmart store's inventory, Sergeant Hensley took a copy of the receipt and cited Defendant for misdemeanor larceny.

## 2. Defendant's Evidence

Defendant went to the Marion Walmart store on 24 October 2012 with her boyfriend, Shannon Mosteller, and her youngest child. The highlighters, phone case, and artificial toenails

were in her possession at the time of her arrival given that she had purchased them on the preceding evening and planned to return the phone case and the artificial toenails. However, after arriving at the store, Defendant decided to keep these items and, instead, purchased groceries and a toy truck.

As she was leaving the store, Defendant was stopped by Ms. Bartlett, who identified herself as a Walmart employee and told Defendant, without providing any further explanation, that she needed to accompany Ms. Bartlett to the office. As the two women re-entered the store, Sergeant Hensley joined them. Subsequently, Corporal D.J. Barrier of the Marion Police Department arrived at the Walmart store as well.

After reaching the office, Ms. Bartlett asked Defendant to hand her the camera that she claimed to have seen Defendant take into the restroom. After Corporal Barrier brought Mr. Mosteller inside the office and asked him about the camera, Mr. Mosteller stated that, while he and Defendant had picked up a camera, they had returned it to the display shelf, showed the officers where he had placed the camera, and consented to a visual inspection of his vehicle, which did not result in the discovery of any stolen property.

Although she initially declined to allow the officers to search her pocketbook, Defendant eventually consented to such an

examination after Sergeant Hensley stated that she could be charged criminally if she maintained her initial position with respect to that issue. As the search proceeded, Ms. Bartlett pointed out the highlighters, phone case, and artificial toenails, which she had not mentioned until that point. After Ms. Bartlett indicated that the items had been stolen, Sergeant Hensley cited Defendant for misdemeanor larceny.

## B. Procedural History

On 24 October 2012, Defendant was issued a citation purporting to charge her with misdemeanor larceny. On 20 May 2013, Defendant entered a plea of guilty in the McDowell County District Court. In light of Defendant's guilty plea, the District Court entered a judgment sentencing Defendant to a term of 45 days imprisonment and then suspended that sentence and placed Defendant on unsupervised probation for a period of twelve months on the condition that Defendant comply with the usual terms of probation, pay the costs, and complete 24 hours of community service. Defendant noted an appeal to the McDowell County Superior Court from the District Court's judgment.

On 24 June 2013, Defendant filed a motion seeking to have evidence concerning the items allegedly seized from her pocketbook suppressed. The charge against Defendant came on for trial before the trial court and a jury at the 27 June 2013

criminal session of the McDowell County Superior Court. After hearing testimony and argument concerning the issues raised by Defendant's suppression motion, the trial court denied Defendant's motion. In addition, the trial court denied Defendant's motion that the case be remanded to the McDowell District Court for compliance with the District Court judgment.

After discussions with the prosecutor, Defendant's trial counsel informed the trial court that Defendant and the State had reached an agreement under which Defendant would plead guilty to misdemeanor larceny, receive a suspended sentence, and be placed on supervised probation. The trial court, however, rejected the proposed plea agreement without comment. After hearing the testimony of the parties' witnesses, the arguments of counsel, and the trial court's instructions, the jury returned a verdict convicting Defendant of misdemeanor larceny. On 28 June 2013, the trial court entered a judgment sentencing Defendant to 45 days imprisonment and requiring Defendant to pay a $250.00 fine and the costs. Defendant noted an appeal to this Court from the trial court's judgment.[1]

---

[1]After the conclusion of the proceedings in the trial court, Defendant's trial counsel informed the trial court that Defendant desired to appeal the trial court's judgment and stated that he did not know how to do so considering that he had "never handled an appeal." In response, the trial court indicated that Defendant had given notice of appeal based upon the statement made by her trial counsel. As a result of the

## II. Legal Analysis

As an initial matter, we are required to determine whether the trial court had jurisdiction to enter the judgment from which Defendant has appealed. Although neither party has advanced any contention with respect to this issue, well-established North Carolina law provides that, "where an indictment [or other criminal pleading] is alleged to be invalid on its face, depriving the trial court of its jurisdiction, a challenge may be made at any time." *State v. Ackerman*, 144 N.C. App. 452, 464, 551 S.E.2d 139, 147, *cert. denied*, 354 N.C. 221, 554 S.E.2d 344 (2001). Simply put, "'[t]here can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence of an accusation the court acquires no jurisdiction whatever, and if it assumes jurisdiction a trial and conviction are a nullity.'" *McClure v. State*, 267 N.C. 212, 215, 148 S.E.2d 15, 17-18 (1966) (quoting 42 C.J.S., Indictments and Informations § 1 (1944)). "This Court may raise the question of subject matter jurisdiction on its own motion, even if it was not argued by the parties in

___

fact that Defendant clearly indicated a desire to appeal from the trial court's judgment orally and in open court, we concur in the trial court's determination that Defendant had adequately noted an appeal to this Court from the trial court's judgment and, for that reason, deny the alternative petition for the issuance of a writ of *certiorari* that Defendant has filed with this Court.

their briefs." *Ramsey v. Interstate Insurors, Inc.*, 89 N.C. App. 98, 102, 365 S.E.2d 172, 175, *disc. review denied*, 322 N.C. 607, 370 S.E.2d 248 (1988). As a result, we must determine whether the trial court had jurisdiction over this case before we have the authority to address the validity of Defendant's challenges to the trial court's judgment.

"A citation is a directive, issued by a law enforcement officer or other person authorized by statute, that a person appear in court and answer a misdemeanor or infraction charge or charges." N.C. Gen. Stat. § 15A-302(a). Citations "may serve as pleadings of the State in criminal cases." N.C. Gen. Stat. § 15A-921(1). "The purpose of a[] [charging instrument] is to give defendant sufficient notice of the charge against him, to enable him to prepare his defense, and to raise the bar of double jeopardy in the event he is again brought to trial for the same offenses." *State v. Ingram*, 20 N.C. App. 464, 466, 201 S.E.2d 534, 533 (1974). As a result, a valid citation must:

> (1) Identify the crime charged, including the date, and where material, identify the property and other persons involved,
>
> (2) Contain the name and address of the person cited, or other identification if that cannot be ascertained,
>
> (3) Identify the officer issuing the citation, and

> (4) Cite the person to whom issued to appear in a designated court, at a designated time and date.

N.C. Gen. Stat. § 15A-302(c). In addition, every criminal pleading, including a citation used for that purpose, must contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5). As a result, given that "[a]n indictment [or other criminal pleading] is invalid and prevents the trial court from acquiring jurisdiction over the charged offense if [it] 'fails to state some essential and necessary element of the offense of which the defendant is found guilty,'" *State v. McNeil*, 209 N.C. App. 654, 658, 707 S.E.2d 674, 679 (2011) (quoting *State v. Wilson*, 128 N.C. App. 688, 691, 497 S.E.2d 416, 419, *disc. review improvidently granted*, 349 N.C. 289, 507 S.E.2d 38 (1998)), the citation issued against Defendant in this case would not have sufficed to authorize the trial court to exercise jurisdiction over this case in the event that it failed to charge the Defendant with the commission of a misdemeanor

larceny in the manner required by N.C. Gen. Stat. § 15A-924(a)(5).

"The essential elements of larceny are that the defendant:

(1) took the property of another;

(2) carried it away;

(3) without the owner's consent; and

(4) with the intent to deprive the owner of his property permanently."

*State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982) (citing *State v. Booker*, 250 N.C. 272, 273, 108 S.E.2d 426, 427 (1959) and N.C. Gen. Stat. § 14-72(a)), *overruled on other grounds in State v. Mumford*, 364 N.C. 394, 402, 699 S.E.2d 911, 916 (2010). Consistently with the language of N.C. Gen. Stat. § 15A-302(c)(1), which requires citations to identify "the property" involved in the commission of a particular crime, "our case law on larceny indictments makes clear that the property alleged to have been taken must be identified 'with certainty sufficient to enable the jury to say that the article proved to be stolen is the same.'" *State v. Justice*, __ N.C. App. __, __, 723 S.E.2d 798, 801 (2012) (quoting *State v. Ingram*, 271 N.C. 538, 541-42, 157 S.E.2d 119, 122 (1967)); *see also State v. Godet*, 29 N.C. 210, 210 (1847) (holding that "[a]n indictment for larceny must describe the article stolen with a certainty sufficient to identify it" so as to "enable[e] the judge to see

upon its face that the article is of value" and to protect "the accused" by "enabl[ing] him to show, if subsequently called into court to answer for the offense, that he has already been convicted or acquitted of its commission"). As a result, a criminal pleading, including a citation, that purports to charge the defendant with committing larceny must specify the property that the defendant is alleged to have stolen.

The citation issued to Defendant in this case alleged that she "did steal take and carry away with the intent to deprive the owner of its use permanently items belonging to Wal Mart Inc. having a value of $25.43." As should be obvious from even a cursory examination of the citation that was issued to Defendant, the criminal pleading utilized in this case does not identify the property that Defendant is alleged to have stolen. For that reason, the charging instrument utilized in this case did not describe the items stolen "'with certainty sufficient to enable the jury to say that the article proved to be stolen is the same.'" *Ingram*, 271 N.C. at 541, 157 S.E.2d at 122 (quoting *State v. Caylor*, 178 N.C. 807, 808, 101 S.E. 627, 628 (1919)). As a result, given that the citation that served as the basis for the entry of the trial court's judgment was fatally defective and did not suffice to provide the trial court with jurisdiction over this case, we are required to vacate the trial

court's judgment. *Eg., State v. Johnson*, 42 N.C. App. 234, 236-37, 256 S.E.2d 297, 299 (1979) (citing 4 Strong's N.C. Index 3rd, Criminal Law § 127.2, p. 665) (holding that "[t]he court should have allowed the motion to dismiss on the grounds that the citation failed to charge the commission of a crime" and stating that, "[b]ecause the citation failed to charge a crime, the judgment of the Superior Court must be . . . arrested").[2]

## III. Conclusion

Thus, for the reasons set forth above, we conclude that, since the citation utilized as the criminal pleading in this case failed to adequately charge the commission of a criminal offense, the trial court lacked jurisdiction to enter judgment against Defendant in this case. As a result, the trial court's judgment should be, and hereby is, vacated.

VACATED.

Judges GEER and STEPHENS concur.

Report per Rule 30(e).

---

[2]Had the defect in the citation issued in this case been identified prior to trial, the prosecutor could have addressed the problem discussed in the text of this opinion by filing a misdemeanor statement of charges as authorized by N.C. Gen. Stat. § 15A-922.