ZACHARY, Judge.
 

 *525
 
 Where there was evidence to support a finding that the victim suffered serious personal injury, the trial court did not err in instructing the
 
 *526
 
 jury on first-degree sexual offense. Where time was not of the essence, and defendant did not allege prejudice, the State's failure to physically amend the indictment as ordered by the trial court to remedy a discrepancy between the date of offense alleged in the indictment and that supported by the State's evidence was not fatal and did not deprive the trial court of jurisdiction.
 

 I. Factual and Procedural Background
 

 On 13 July 2013, Curtis Ray Gates, Jr. (defendant), a member of the United States Marine Corps stationed at Camp Lejeune, was on base washing clothes. After finishing his laundry, he returned home to his wife, and then went out. In the early morning of 14 July 2013, defendant passed a bar on Dewitt Street in Jacksonville called Hooligans, and stopped in the parking lot to see why it was so crowded. In the parking lot, defendant saw a woman leaning against her car.
 

 According to the woman, A.A., she was in her vehicle when defendant opened the door, struck her in the face, punched her in the abdomen, dragged her from the vehicle, and forced her to perform oral sex on him. According to defendant, the two flirted, A.A. had been taking ecstasy, and she voluntarily engaged in oral sex.
 

 Officer Chris Funcke, a member of the Jacksonville Police Department, was in the area investigating a disturbance. When he approached, he found A.A. performing oral sex on defendant. A.A. immediately rushed to Officer Funcke, crying hysterically and appearing to be in distress, stating that defendant was "going to rape and kill her." She claimed that defendant had struck her and dragged her to where Officer Funcke found them. A.A. was disheveled; her makeup was smeared, the side of her face "was red, as if she had been struck with something[,]" and Officer Funcke detected marks nearby, indicating that somebody had been dragged to where he observed A.A. and defendant initially. Officer Funcke also testified that he saw a bit of blood on A.A.'s lip, but none on her face. Another officer testified that there were dirt and grass stains on the tops of A.A.'s shoes. A.A. was then transported by EMS to Onslow Memorial Hospital.
 

 In the emergency room of Onslow Memorial Hospital, Officer Steve Moquin took photographs of A.A.'s injuries, which included bruising and swelling on the left side of her face, above the cheek bone and above the left eye; an abrasion and bruise to the right side of her right cheek; bruising on both sides of her neck, consistent with the grip of a hand; an abrasion on her right elbow; an abrasion on the heel of her right hand; an abrasion on the outside of her left ankle; and an injury on her bottom
 
 *527
 
 lip. The injuries appeared to be fresh, and there was still dirt in some of them. Another officer, Officer Ashley Potter, observed that A.A.'s left knee was swelling. At the hospital, A.A. complained that the left side of her abdomen was sore and, upon inspection, staff saw four red marks, consistent with the spacing of knuckles. A.A. testified that she continued to experience pain for four or five days after the assault.
 

 On 13 May 2014, the Onslow County Grand Jury indicted defendant for second-degree sexual offense, first-degree kidnapping, and crime against nature. On 10 June 2014, a superseding indictment was entered by the Grand Jury, charging defendant with first-
 
 *886
 
 degree sexual offense, first-degree kidnapping, and crime against nature.
 

 On 9 October 2014, the jury found defendant guilty of first-degree sexual offense, first-degree kidnapping, and crime against nature. The jury's verdict of guilty on the charge of first-degree kidnapping was based both upon the fact that A.A. was not released in a safe place, and the fact that A.A. was sexually assaulted. The jury further found that the restraint or removal of A.A. facilitated the commission of both a crime against nature and a first-degree sexual offense.
 

 The trial court found defendant to be a prior record level I. A Static-99 assessment submitted to the court found defendant to be a low risk. The trial court consolidated judgment on the three guilty verdicts, and sentenced defendant to an active sentence in the presumptive range of 240-348 months imprisonment.
 

 Defendant gave oral notice of appeal at trial.
 

 II. Jury Instruction
 

 In his first argument, defendant contends that the trial court erred in instructing the jury on first-degree sexual offense. We disagree.
 

 A. Standard of Review
 

 "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed
 
 de novo
 
 by this Court."
 
 State v. Osorio,
 

 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence."
 
 State v. Cameron,
 

 284 N.C. 165
 
 , 171,
 
 200 S.E.2d 186
 
 , 191 (1973),
 
 cert. denied,
 

 418 U.S. 905
 
 ,
 
 94 S.Ct. 3195
 
 ,
 
 41 L.Ed.2d 1153
 
 (1974). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial."
 

 Id.
 

 "Where jury instructions are given without supporting evidence, a new trial is required."
 
 State v. Porter,
 

 340 N.C. 320
 
 , 331,
 
 457 S.E.2d 716
 
 , 721 (1995).
 

 *528
 

 B. Analysis
 

 The State's case on first-degree sexual offense proceeded on the theory that A.A. suffered "serious personal injury." Defense counsel objected, contending that the jury should only be instructed on second-degree sexual offense, because A.A.'s injuries were "minor scrapes and abrasions." The trial court instructed the jury on both first-degree and second-degree sexual offense, defining serious injury as "any type of injury that causes great pain and suffering." Defendant maintains that this theory of first-degree sexual offense was unsupported by the evidence, and that therefore the trial court erred in instructing the jury on that charge.
 

 First-degree sexual offense is defined in N.C. Gen.Stat. § 14-27.4, which provides in relevant part that "[a] person is guilty of a sexual offense in the first degree if the person engages in a sexual act ... [w]ith another person by force and against the will of the other person, and ... [i]nflicts serious personal injury upon the victim or another person [.]" N.C. Gen.Stat. § 14-27.4(a)(2)(b) (2013). Whether an injury is serious is a finding of fact to be determined by a jury.
 
 State v. Boone,
 

 307 N.C. 198
 
 , 203-04,
 
 297 S.E.2d 585
 
 , 589 (1982),
 
 overruled on other grounds by
 

 State v. Richmond,
 

 347 N.C. 412
 
 ,
 
 495 S.E.2d 677
 
 (1998) ;
 
 see also
 

 State v. Ackerman,
 

 144 N.C.App. 452
 
 , 459-60,
 
 551 S.E.2d 139
 
 , 144 (2001). Mental injury may also be considered.
 

 Id.
 

 at 204
 
 ,
 
 297 S.E.2d at
 
 589 ;
 
 see also
 

 Ackerman,
 

 144 N.C.App. at 460
 
 ,
 
 551 S.E.2d at 144
 
 .
 

 Defendant asserts that the evidence at trial of serious personal injury was insufficient to support the instruction on first-degree sexual offense. However, the general rule is that, "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury."
 
 State v. Summitt,
 

 301 N.C. 591
 
 , 597,
 
 273 S.E.2d 425
 
 , 428 (citations and quotations omitted),
 
 cert. denied,
 

 451 U.S. 970
 
 ,
 
 101 S.Ct. 2048
 
 ,
 
 68 L.Ed.2d 349
 
 (1981). In the instant case, the evidence demonstrated that Officer Funcke saw some
 
 *887
 
 blood on A.A.'s lip. In addition, A.A. went to the emergency room for four hours where her injuries were photographed, and the photographs verified that A.A. suffered bruises on her ribs, arms, and face. A.A. testified that she was in pain for four or five days afterwards. The evidence further indicated that, due to her feeling of a lack of safety, A.A. left her boyfriend, terminated her lease, and moved back in with her family, and at the time of trial, roughly a year later, still felt unsafe being alone.
 
 *529
 
 Defendant relies on
 
 Boone,
 
 a case in which there was no evidence of physical or residual mental injury. In that case, the evidence at trial revealed only that, on the morning of the offense, "the victim was shaking, crying and 'hysterical' immediately after the crime was committed and after the officers arrived on the morning of the crime."
 
 Boone,
 

 307 N.C. at 205
 
 ,
 
 297 S.E.2d at 590
 
 . Our Supreme Court noted that:
 

 This record does not disclose that there was any residual injury to the mind or nervous system of the victim after the morning of the crime. The hysteria and crying described by the witnesses occurred nearly coincident with the crime and were results that one could reasonably expect to be present during and immediately after any forcible rape or sexual offense has been committed upon the female's person.
 

 Id.
 

 The Court observed that "ordinarily the mental injury inflicted must be more than the
 
 res gestae
 
 results present in every forcible rape and sexual offense[,]" and held that the evidence in
 
 Boone
 
 was insufficient to support a finding of serious personal injury.
 

 Id.
 

 Unlike
 
 Boone,
 
 however, the instant case offers ample evidence of physical injury, including injuries to A.A.'s face, neck, arms, and legs.
 

 Defendant also contends that there was insufficient evidence of lingering mental injury. However, our Supreme Court held in
 
 Boone
 
 that "[i]t is impossible to enunciate a 'bright line' rule as to when the acts of an accused cause mental upset which could support a finding of 'serious personal injury [,]' " and that:
 

 In order to support a jury finding of serious personal injury because of injury to the mind or nervous system, the State must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself.
 

 Id.
 
 at 205,
 
 297 S.E.2d at 589-90
 
 . We have since held this to mean that "if a mental injury extends for some appreciable time, it is therefore a mental injury beyond that normally experienced in every forcible rape."
 
 Ackerman,
 

 144 N.C.App. at 460
 
 ,
 
 551 S.E.2d at 144
 
 (quoting
 
 State v. Easterling,
 

 119 N.C.App. 22
 
 , 40,
 
 457 S.E.2d 913
 
 , 924,
 
 disc. review denied,
 

 341 N.C. 422
 
 ,
 
 461 S.E.2d 762
 
 (1995) ). The evidence in the instant case demonstrates that two months after the incident, A.A. broke her lease and moved to Asheville with her family, and that roughly a year
 
 *530
 
 later, A.A. still felt unsafe while alone. This evidence of A.A.'s residual mental injury is sufficient to support a finding of serious personal injury.
 

 We hold that the evidence at trial was sufficient to go to a jury, and that the trial court did not err in instructing the jury on first-degree sexual offense.
 

 This argument is without merit.
 

 III. Indictment
 

 In his second argument, defendant contends that there was a fatal variance between the date of the crimes alleged in the indictment and the evidence offered by the State at trial. We disagree.
 

 A. Standard of Review
 

 "An attack on an indictment is waived when its validity is not challenged in the trial court."
 
 State v. Wallace,
 

 351 N.C. 481
 
 , 503,
 
 528 S.E.2d 326
 
 , 341,
 
 cert. denied,
 

 531 U.S. 1018
 
 ,
 
 121 S.Ct. 581
 
 ,
 
 148 L.Ed.2d 498
 
 (2000). "However, where an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court."
 

 Id.
 

 B. Analysis
 

 The superseding indictment in this case listed the date of the offenses as 10 May
 
 *888
 
 2013. At trial, the State moved to amend the superseding indictment to indicate that 14 July 2013 was the date of the offenses. The trial court allowed this motion, but the physical document was never amended. Defendant contends that the failure to physically execute the amendment created a fatal variance in the indictment.
 

 Even assuming,
 
 arguendo,
 
 that this resulted in a variance, "our courts have recognized the general rule that '[w]here time is not of the essence of the offense charged and the statute of limitations is not involved, a discrepancy between the date alleged in the indictment and the date shown by the State's evidence is ordinarily not fatal.' "
 
 State v. Poston,
 

 162 N.C.App. 642
 
 , 647,
 
 591 S.E.2d 898
 
 , 902 (2004) (quoting
 
 State v. Locklear,
 

 33 N.C.App. 647
 
 , 653-54,
 
 236 S.E.2d 376
 
 , 380,
 
 disc. review denied,
 

 293 N.C. 363
 
 ,
 
 237 S.E.2d 851
 
 (1977) ).
 

 In
 
 Poston,
 
 the defendant was originally indicted on fifteen sexual offense charges arising from incidents that occurred between 1993 and 2000. Defendant was ultimately convicted of, among other charges, two counts of first-degree sexual offense that were alleged in the indictments to have occurred between June and July of 1994, and in early to
 
 *531
 
 mid-October of 1997.
 
 Id.
 
 at 645-46,
 
 591 S.E.2d at 901
 
 . On appeal, defendant contended that the trial court should have dismissed these charges due to a lack of evidence that the offenses were committed during the periods alleged in the indictments.
 
 iD.
 
 at 646-47, 591 S.E.2D at 902. wE first noted that, where defendant presented no alibi defense with respect to the date of the offenses, the date was immaterial.
 
 Id.
 
 at 648,
 
 591 S.E.2d at 902
 
 . Moreover, although double jeopardy was implicated by the State's dismissal of several charges, the remaining indictments each corresponded to an incident for which the charges were not dismissed. Had there been more indictments than incidents, the dates might have been material, but because there was an even ratio, the dates alleged in the indictments were not material.
 
 Id.
 
 at 649-50,
 
 591 S.E.2d at 903
 
 . Lastly, we observed that, although the dates were relevant for the purpose of sentencing under the Fair Sentencing Act, that issue had no impact on the jury's determination of defendant's guilt.
 
 Id.
 
 at 650-51,
 
 591 S.E.2d at 904
 
 .
 

 In the instant case, defendant was indicted for first-degree sexual offense, first-degree kidnapping, and crime against nature. Time is not an essential element of any of these crimes. Further, all three offenses are felonies. N.C. Gen.Stat. §§ 14-27.4(a)(2)(b), 14-39, 14-177 (2013). In North Carolina, "no statute of limitations bars the prosecution of a felony."
 
 State v. Taylor,
 

 212 N.C.App. 238
 
 , 249,
 
 713 S.E.2d 82
 
 , 90 (2011) (quoting
 
 State v. Johnson,
 

 275 N.C. 264
 
 , 271,
 
 167 S.E.2d 274
 
 , 279 (1969) ). Defendant does not argue any of the issues raised in
 
 Poston,
 
 instead merely alleging that the variance alone, by merit of its bare existence, was sufficient to be fatal to the indictment.
 

 Because time was not an essential element of the offenses, no alibi defense was raised, and no statute of limitations was implicated, the discrepancy between the date alleged in the indictment and that shown by the State's evidence was not automatically fatal. Nor does defendant argue that this discrepancy in any way prejudiced his defense; rather, defendant simply asserts that, in this specific case, this Court should overlook the precedent of cases like
 
 Poston
 
 which held the discrepancy not fatal. We decline to do so.
 

 This argument is without merit.
 

 IV. Conclusion
 

 In conclusion, there was ample evidence of A.A.'s injuries, both physical and mental, to support the trial court's jury instruction on first-degree sexual offense, and therefore the trial court did not err issuing
 
 *532
 
 that instruction to the jury. Further, as time was not of the essence and the statute of limitations was not implicated, any variance between the indictment, which was never physically amended, and the evidence at trial was not fatal, and did not deprive the trial court of jurisdiction.
 

 NO ERROR.
 

 Judges BRYANT and CALABRIA concur.